GEORGE W. WHITE, Appellant, *v.* MARY REED et al., as Executors, etc., Respondents.

*It seems,* that where one member of a firm sells out his interest in the firm to the other members, who continue the business with the firm property, and the sale is subsequently set aside for fraud, the out-going partner may require his copartners to account to him as trustees for the profits resulting from the business after his retirement.

Where, however, the retiring partner received on the sale more than the amount of his interest in the capital or assets of the firm, he is not entitled to share in the subsequent profits; the fraud that induced the sale entitles him to full indemnity for any loss suffered thereby, but does not entitle him to recover upon an accounting.

In an action for such an accounting, the sale was adjudged to have been induced by fraud, defendants were required to account, and it was directed that upon such an accounting plaintiff be charged with the moneys paid and the value of the property transferred to him on the sale. The referee decided that plaintiff received more than the value of his interest in the firm assets, and judgment was entered against him for the excess. *Held,* error; that after the obstacle produced by the sale and release was removed, plaintiff's remedy required an accounting to ascertain whether he was entitled to any, and, if so, what amount, treating his former partners as trustees of the capital in which he had an interest, and it having been found he had no such interest, he was not entitled to share in the subsequent profits; but that defendants had no cause of action or right of recovery against him.

(Argued February 4, 1891; decided March 17, 1891.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, endered upon an order made November 3, 1890, which affirmed a judgment in favor of defendants entered upon the report of a referee, and from an order of said General Term which reversed a judgment in favor of defendants previously entered upon the report of another referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*George H. Adams* for appellant. The proceedings upon the reference before Mr. Cole, and the report and judgment

thereon, were in accordance strictly with the interlocutory decree, and were without error, and so, that judgment should be affirmed. (*Newdecker* v. *Kohlberg*, 3 Daly, 409 ; *McCabe* v. *Muschowitz*, 15 id. 37 ; Cooley on Part. §§ 338, 340, 342, 343, 345 ; 15 Ves. 218 ; 1 Jac. & Walk. 267 ; 2 Russ. 325 ; 1 Jac. 284 ; 4 Russ. 126 ; 17 Ves. 298 ; 2 Keen. 722 ; 4 Myl. & Cr. 41 ; *Richardson* v. *Bank of England*, Id. 155 ; Story on Part. §§ 182, 331, 348, 349 ; Pars. on Part. 230, 524 ; 2 Lindley on Part. 979 ; *Parsons* v. *Hayward*, 31 Beav. 199 ; *Miller* v. *Kean*, 27 id. 236 ; *Turner* v. *Major*, 3 Giff. 442 ; *Cook* v. *Collinbridge*, 27 Beav. 456 ; *Featherstonaugh* v. *Fenwick*, 17 Ves. 299, 303 ; *Townsend* v. *Townsend*, 1 Giff. 201 ; *McDonald* v. *Richardson*, Id. 81 ; *Flockton* v. *Bunning*, 8 Ch. 323 ; *Wilson* v. *Simpson*, 89 N. Y. 619, 620 ; *Collender* v. *Phelan*, 79 id. 366 ; *King* v. *Leighton*, 100 id. 386 ; *Taylor* v. *Hutchinson*, 25 Gratt. 536 ; *Hoyt* v. *Sprague*, 103 U. S. 626 ; Story on Part. §§ 133, 182, 230 ; 15 Ves. 226 ; 1 Anst. 94 ; 2 Brown Ch. 655 ; 1 Johns. Ch. 38, 165 ; 2 id. 117 ; 3 id. 433 ; *Durbin* v. *Barber*, 14 Ohio, 224 ; *In re Ross*, 87 N. Y. 516 ; *Tolman* v. *R. R. Co.*, 92 id. 353.) Referee Cummings' report goes not only upon the errors of the General Term, but contains gross errors of its own. (*Wright* v. *Delafield*, 25 N. Y. 266 ; *Hoar* v. *U. S. R. Co.*, 30 Hun, 375, 376 ; *Storrs* v. *Flint*, 14 J. & S. 498, 519.)

*Albert Stickney* for respondents. The plaintiff was not entitled to profits. (*King* v. *Leighton*, 100 N. Y. 386 ; *Wedderburn* v. *Wedderburn*, 2 Keen, 752 ; *Simpson* v. *Chapman*, 4 DeG., M. & G. 154 ; *Vyse* v. *Foster*, L. R. [8 Ch. App.] 309 ; L. R. [H. L.] 318 ; *Taylor* v. *Hutchinson*, 25 Gratt. 536, 539 ; 2 Lindley on Part. 979, 980, 991 ; *Crittenden* v. *Witbeck*, 50 Mich. 401 ; *Durbin* v. *Barber*, 14 Ohio, 311 ; *Bell* v. *Mehen*, 2 Cal. 159 ; *Turner* v. *Otis*, 30 Kan. 1 ; *Phillip* v. *Reeder*, 3 C. E. Green, 95.) The plaintiff was entitled to no allowance for good will. (*Stuart* v. *Gladstone*, L. R. [10 Ch. Div.] 626 ; *Hall* v. *Hall*, 20 Beav. 139 ; *Jones* v. *Butler*, 87 N. Y. 617 ) If the accounting brought the plaintiff in debt, he

must accept that result, and the defendants are entitled to an affirmative judgment in their favor, although they pleaded no counter-claim. (Story's Eq. Pl. § 398; *Holderness* v. *Rankin*, 2 DeG., F. & J. 258; *Duryee* v. *Linsheimer*, 12 C. E. Green, 258, 366; *Andrews* v. *Gilman*, 122 Mass. 471; *Eddleston* v. *Collins*, 3 DeG., M. & G. 1; 1 Story's Eq. Juris. § 522; *Allen* v. *Allen*, 11 Heisk. 387; *Little* v. *Merrill*, 62 Me. 328; *Campbell* v. *Campbell*, 4 Halstead Ch. 740, 741; 2 Daniell's Ch. Pr. [5th ed.] 992; *Felder* v. *Wall*, 26 Miss. 595; *Griggs* v. *Clark*, 23 Cal. 427; *Grove* v. *Fresh*, 9 Gill. & J. 280; *Raymond* v. *Caine*, 45 N. H. 201; *Cook* v. *Jenkins*, 79 N. Y. 575; *Vassear* v. *Livingston*, 13 id. 248; Code Civ. Pro. §§ 501, 502.) This record presents only the appeal from the judgment of November 17, 1890. (*White* v. *White*, 110 N. Y. 642; Code Civ. Pro. §§ 191, 1316, 1325.)

Bradley, J. The plaintiff, Horatio Reed and Charles White, were equal partners in business from 1862 to August 4, 1876, when plaintiff sold out his interest to his partners. The plaintiff in 1881 brought this action against Reed and White to set aside the sale on the ground of alleged fraud and for an accounting, with a view to the recovery of an additional sum by way of capital and profits. The court determined that the allegation of fraud was sustained, and by interlocutory decree set aside the sale and directed an accounting, which was had before a referee, upon whose report judgment was entered in favor of the plaintiff for upwards of one hundred thousand dollars. That judgment was reversed by the General Term and a new accounting directed before another referee. (23 J. & S. 417.) It was had and resulted in a report and judgment against the plaintiff for upwards of eight thousand dollars. The latter judgment was affirmed. This appeal is from that affirmance and from the order reversing the judgment entered upon the first report. The interlocutory judgment, and the facts and conclusions of law found by the court directing it, remain undisturbed and effectual as the determination of the rights and liabilities of the parties, so far as they are

dependent upon such decree. The business of the firm was. large and consisted of buying live hogs in Chicago and shipping them to the city of New York, where they were slaughtered and the product disposed of. The plaintiff resided in Chicago and had charge of buying and shipping the hogs to New York, where they were received by Reed and White, who had entire charge of the business there, and kept the books representing the accounts of the firm. In fact New York was its place of business. In June, 1872, Reed entered into a secret arrangement with one Bate to sell and deliver to the latter, from day to day in the name of the firm, a large quantity of slaughtered hogs, to be disposed of by Bate for the joint profit of him and Reed to the exclusion of the firm. To accomplish this a formal agreement was made between them on the one part and certain persons of the other part, whereby the latter agreed to make advances and take dressed hogs on terms particularly mentioned; and the firm of Charles White & Co. made sales and deliveries to Bate up to February eighth following of over three million pounds of dressed hogs amounting to $186,761.58. In June, when such arrangement was made, Bate was indebted to the firm $24,722.71, and was then insolvent, of which Reed was advised when he entered into the agreement with him; and when the business with Bate was closed in February, 1873, his indebtedness to the firm had increased to $44,735.74. In August, 1876, the plaintiff expressed to Reed and White dissatisfaction with the conduct of the business in New York, and especially with the loss occasioned by the indebtedness of Bate, and he proposed to sell his interest in the firm for a sum certain. After some negotiation he sold out to Reed and White and agreed to take in cash and notes about $27,000, and one-third interest in certain real estate at a valuation of about $30,000, making together $57,000 for his interest. At that time a balance sheet was taken from the books which showed his credit balance to be $70,818.40; and to induce him to make the sale for an amount less than such balance, the defendants represented to the plaintiff that the Bate account was of no value and ought

not to be taken into account. The court found that the representations in that respect were false to the knowledge of Reed, and were made with fraudulent intent on his part to induce the plaintiff to sell his interest for less than its value, and with the fraudulent intent of concealing from him the true state of the affairs of the firm to his disadvantage. The value of the indebtedness of Bate was in the liability of Reed to account to the firm founded upon his secret arrangement before mentioned with Bate; and in that view the interlocutory decree directed that in the accounting Reed be charged with the value of the merchandise delivered to Bate by the firm after June 15, 1872, and credited with payments made by him to the firm. The further direction for the accounting given by the interlocutory decree, was that the defendants account for the disposition by them of the partnership assets which were in their possession on August 4, 1876; and that an accounting be had between the parties in respect to their several interests in the assets or their proceeds, or in the amounts for which the defendants might be chargeable in their disposition of them; that an account be taken of the assets and liabilities of the firm existing on that day; that the defendants file an account and the referee make an inventory of such assets and liabilities; and that he ascertain and determine what were the obligations of the defendants to the plaintiff in disposing of the partnership assets, or any of them, after the sale by him, and the amounts with which the defendants were chargeable by reason of such disposition; and that on such accounting the plaintiff be charged with all sums of money withdrawn by him or paid to him by the firm in August, 1876, also the value of all property withdrawn by or transferred to him by the firm or by the defendants at that time. The referee determined that the plaintiff received something more than he was entitled to at the time of the sale to Reed and White. This was based upon the finding made by him of the value of the firm assets at that time, and the determination that the plaintiff then received fifty-seven thousand dollars for his interest. Both of those propositions of fact are

contested by the plaintiff, who insists that he did not receive and should not account for or be charged with that amount. The one-third interest in the real estate before mentioned was not conveyed to him, but an agreement was made by White, who held the legal title for the firm, to sell it to him and to make conveyance when requested to do so. In December, 1880, the plaintiff released White from the agreement to convey, in consideration whereof Reed and White paid the plaintiff nineteen thousand dollars. The plaintiff claims that he should not be charged with the $30,000, but only with the $19,000, as of the time he received the latter sum. And this is urged on the ground that when the sale by him to his partners, Reed and White, was set aside, the agreement to sell and convey such interest in the real estate referred to, fell with it, and he was chargeable in that respect with only what he received upon the release of it by him and as of the time he received the consideration of his release. That view does not seem tenable, as the fraud charged had no relation to the nature of the consideration which he received in payment for the transfer of his interest in the partnership property. Before the commencement of this action, he had released his claim under White's agreement to sell him the land for a specific consideration paid to him. And on this subject the interlocutory decree directed that in the accounting the plaintiff should be charged with all sums of money withdrawn by him from the firm in August, 1876, "also with the value of all property withdrawn by or transferred to him by said firm or by the defendants at that time." The estimated value then made seems to have been the amount for which the third interest in the land was taken by the plaintiff, and there is no other evidence and no finding or request to find upon the subject of its value at that time. And upon this review this court cannot say that it was worth then any less than the price allowed by the plaintiff for it.

The question whether his interest in the firm assets was entirely covered by the $57,000 was one of more difficulty. All the partners had credit balances on the books, and the

custom was to make annual rests and to add interest from year to year on such balances. They, as represented by the balance sheet of 1st of July, 1876, were: Charles White, $124,657.41; Reed, $84,096.99; plaintiff, $70,818.40. The plaintiff's interest as thus represented (a sum equal to which he at first proposed to sell for) was reduced little less than one-third the amount of the Bate indebtedness in the arrangement pursuant to which he made the sale. These credit balances on the accounting were changed by adding some assets not on the books or in the ledger account at the time of the sale, also by charging Reed with the amount of the Bate indebtedness, which accrued after June 15, 1872, and adding one-third that amount to the balance of each of the other partners, thus producing actual credit balances as of August 4, 1876, as follows: Plaintiff, $78,909.18; Charles White, $132,748.19; Reed, $68,515.43, making an aggregate, $278,163.60. But the value of the interests of the partners so represented was dependent upon the actual value of the assets of the firm. And while they had the nominal value of upwards of $290,000, the referee found that at that time the actual value was only $201,181.77, and after charging one-third of the losses and depreciation and the small amount of liabilities to each of the parties, the result, as found by the referee, was that the $57,000 was in excess of the plaintiff's interest in the partnership assets. While the evidence is not such as to necessarily require the finding that the value of the property of the firm on August 4, 1876, was no more than the amount so found to be its value, there was evidence which permitted the conclusion that if the partnership had been then closed up, the amount of the assets would have produced no more than that sum. The question upon the evidence was one of fact, and it cannot upon this review be held that the finding was without some evidence for its support. Assuming then that the plaintiff pursuant to his agreement to sell, received the value of his interest in the assets at that time, the question arises whether he was entitled to an accounting which would give him a right to participate in the profits of the business thereafter continued

by Charles White and Reed. They carried on the same busi-
ness at the same place until in June, 1884, and realized large
profits; and the accounting was had after that time. Their
deaths did not occur until in 1888. It is a general rule that
when a partnership is dissolved by death of a member, or
otherwise, and the other members continue the business, or
enter upon new enterprises with the firm property, they may be
required to account to the outgoing partner or his representative
for the resulting profits. And in some cases it may be optional
on his part whether they be required to allow to him a due
share of the profits or interest upon his share of the capital.
(*Crawshay* v. *Collins*, 15 Vesey, 218; 1 Jac. & Walk. 267;
2 Russell, 325; *Featherstonhaugh* v. *Fenwick*, 17 Vesey,
298; *Wedderburn* v. *Wedderburn*, 2 Keen, 722; 1 Myl. &
Craig, 41.)

And the same rule is applicable where a sale by one mem-
ber of a firm to his partners is set aside for fraud or other
cause. (*Cook* v. *Collingridge*, Jac. 607; *King* v. *Leighton*,
100 N. Y. 386.)

It is, however, contended on the part of the plaintiff, that
the practical effect of setting aside the sale was the restoration
of the plantiff's relation of partner and its continuance without
interruption by the sale; and that at least he had a credit
balance of upwards of $21,000 remaining, and was entitled to
share in the profits of the business until its termination in
June, 1884. This would have been so if he had continued a
partner and drawn out $57,000. That sum would in that case
have been charged to him on the books, and he would have
been entitled to credit for one-third of the profits. He was not,
in fact, a partner from the time of his sale. The firm before
then existing was dissolved. And the setting aside the sale did
not have the effect to restore the previously existing partner-
ship; but in view of the purpose of this action the effect of
the interlocutory decree was to charge the other partners (who
had continued the business) as trustees, with liability to account
to the plaintiff and allow to him what he was equitably enti-
tled to of the profits of the business so continued, and to

render to him his share remaining in the capital of the firm. This was a subject of inquiry on the accounting. And whether he had any interest in the capital was dependent upon its amount compared with that received by him on the sale. If the amount so received equaled one-third the amount of all the assets of the firm at that time, he had no interest remaining in the capital, and he derived no right to any by setting aside the sale. Nor for that purpose was there a restoration of the excess of the plaintiff's credit balance. The interlocutory decree, as understood, does not go so far as that. It directs the referee to take and state an account of the assets and liabilities of the firm on August 4, 1876. And while it also directed a further accounting by the defendants, it was left for the court, on the coming in of the referee's report, and on motion for judgment upon it, to determine the rights of the parties upon the accounting had. If, as found by the referee, whose report was confirmed by the court, the amount paid to the plaintiff on the sale exceeded the amount of his interest in the capital or assets of the firm, he had nothing in the property appropriated to or used in the business continued by Reed & White after the plaintiff's sale to them, and in that view it is difficult to see any principle upon which his claim for profits resulting from their business, conducted with their own property only, can be supported. While the fraud which induced the sale by the plaintiff gave him the opportunity to seek and obtain full indemnity for the loss he had suffered by it, with the right to treat the defendants as trustees, and require them to account and render to him the share of the profits of the subsequently conducted business in the event they used in it the joint property of the firm, the fact that he had no remaining interest in it denied to him the right to such relief. (*Taylor* v. *Hutchison*, 25 Grattan, 536 ; 18 Am. R. 699 ; *Vyse* v. *Foster*, L. R. [8 Chy. App.] 309 ; 4 Moak, 904 ; L. R. [7 H. L.] 318 ; 11 Moak, 1 ; *Simpson* v. *Chapman*, 4 DeG., M. & G. 154 ; 2 Bates on Part. § 797.)

There is no want of harmony in this view with *King* v. *Leighton*. In that case there were unfinished contracts, which

were the property of the firm at the time of the release of his interest in the partnership joint assets, which release the plaintiff was induced, by the fraudulent representations of the defendant, to give to the latter, who was held liable, upon the principle before mentioned, to account for the firm property and the profits realized from it in the subsequent conduct of the business by him, of which profits the plaintiff was held entitled to his share.    And in the use by the defendant of such profits as capital, it is very likely he may have been required to also account therefor, and to allow to him a suitable measure of resulting profits.    The granting relief of that character does not proceed on the ground that the party seeking it is a member of a continued partnership, but rests upon the fact that when he retired from the firm he had some remaining interest in the capital appropriated and used in the continuance of business by the other partners.    And when they seek such an advantage by fraud they will not be permitted to profit by it to the prejudice of the outgoing partner.    It may be that upon the evidence the plaintiff has reason to think that the value of the assets was greater than that found by the referee, but upon that question this court is concluded by the finding and its confirmation by the court below.    It is true that knowledge of the fact, concealed from him at the time of the sale, of the liability of Reed to make good a portion of the indebtedness of Bate, would have increased the value, as he then understood it, of the firm assets $20,000, and his credit balance upwards of $6,000 ; but inasmuch as the ultimate purpose of this action was an accounting rather than to recover damages for the fraud, the right of the plaintiff to relief was dependent upon his having an interest in the assets as of and subsequent to the time of the sale.    The entries in the books in that respect, or the credit balances, were only presumptive evidence of the value of the capital or assets of the firm.    (*Jones* v. *Butler*, 87 N. Y. 613, 617.)

The good will of the partnership business of the parties seems to have had no consideration on the trial or accounting. The subject of it or its value was not specifically mentioned

in the interlocutory decree.    Nor was it one of the considera-
tions upon which the sale by and purchase from the plaintiff
was founded.    It quite clearly appears that the negotiations
which resulted in the sale were had solely in reference to the
credit balance of the plaintiff, and its comparison in amount
with the then value of the assets.    The matter of the good
will or its value is not the subject for consideration.    (*Stewart*
v. *Gladstone*, L. R. [10 Chy. Div.] 626 ; 27 Moak, 161.)

In accordance with the views already expressed, the vital
fact was whether the value of the assets at the time of the sale
exceeded the amount which the plaintiff then received as its
consideration.    And as it was found that it did not, the
plaintiff was not entitled to recover upon the accounting.    In
determining whether or not the judgment is supported by the
findings of the referee as confirmed by the court, reference
can be had only to the report upon which the judgment was
entered.    When the prior judgment was reversed the report
of the referee on the first accounting became ineffectual.

But the only theory upon which the affirmative judgment
in favor of the defendants can be supported is, that the parties
were in fact partners and this action brought by the plaintiff as
such for a dissolution and accounting.    In that view the plain-
tiff's action would have a phase, which if given to it might
lead to a different result.    In such case, as suggested by the
defendants' counsel, all parties are actors and judgment will
be awarded for and against any of them as their rights may
appear.    Here the partnership existing on August 4, 1876,
was then dissolved and did not in fact thereafter exist.    The
plaintiff's action was for relief founded on fraud ; and after
the obstacle produced by his contract of sale and release was
removed, his ultimate remedy required an accounting to ascer-
tain whether he was entitled to any and what amount, treating
the original defendants, as he was permitted by the interlocu-
tory judgment, as trustees of the capital in which he had an
interest, and to charge them with the amount to which he
was entitled of the profits of the business in which it had been
employed by such defendants.    He was the actor in the action.

The defendants, so far as appears, had no cause against him upon which to found a counter-claim, and none was alleged.

The defendants were, therefore, not entitled to recover the affirmative judgment rendered in their favor.

The judgment, so far as by it the defendants recovered against the plaintiff $8,325.78 and interest, should be reversed, and in other respects affirmed, and be modified accordingly, without costs in this court to either party.

All concur.

Judgment accordingly.