WILLIAM J. KING, Jr., Appellant, *v.* THOMAS LEIGHTON, Respondent.

The bankruptcy of one member of a firm only works a dissolution of the partnership to the extent of disabling it from entering into new engagements or assuming new obligations, except such as are required to complete its unfinished business and to wind up its affairs.

It is the duty of the solvent members to take possession of the firm assets, perform its contracts, extinguish its liabilities and close up its business, and it is the right of the representatives of the bankrupt partner, unless there are peculiar circumstances exempting the particular case in equity from the general rule, to have an accounting, not only with respect to the completed business of the firm, but also as to the profits of all business unfinished at the dissolution, but completed afterward, and, at their option, to such as may be realized from new business entered into and carried on with the assets of the firm.

In an action for an accounting between former partners it appeared that the parties entered into a partnership for the purpose of building bridges; by the partnership agreement plaintiff was to furnish shop room, power and machinery as his share of the capital, defendant to give his personal

attention to the business, to have the direction and control thereof, and
. to furnish any additional capital. Plaintiff became bankrupt, defendant
thereafter continued the business, finishing the contracts then on hand,
and making new ones. After plaintiff's bankruptcy the parties agreed
that defendant should pay, and he was charged rent by plaintiff's assignee
in bankruptcy for the use of the building, power and machinery. After
the partnership contracts were substantially completed, defendant agreed
to pay and was charged an increased rent. The referee allowed plaintiff
his share of the profits on the incompleted contracts. The judgment was
reversed by the General Term, on the ground that the collection of rent
indicated an intent to waive any interest in said profits. *Held* untenable;
that it was not a necessary or legitimate deduction from the facts that the
acceptance of rent operated as a release of plaintiff's interest, or showed
an intent to waive his claim to the prospective profits.

The implication of a contract between parties upon a subject to which their
attention has been directed, and which they have omitted to provide for
by express agreements, should not be made by a court, except to enforce
a manifest equity, or from unequivocal acts of the parties indicating an
intention to effect such a result.

*Collender* v. *Phelan* (79 N. Y. 366); *McClean* v. *Kennard* (L. R., 9 Chan. App.
336), distinguished.

*King* v. *Leighton* (22 Hun, 419), reversed.

(Argued October 8, 1885 ; decided November 24, 1885.)

APPEAL from order of the General Term of the Supreme
Court, in the fourth judicial department, made on the 5th day
of October, 1880, which reversed a judgment entered on the
report of a referee. (Reported below, 22 Hun, 419.)

The nature of the action and the material facts are stated in
the opinion.

*Sherman S. Rogers* for appellant. Defendant was bound
to render a faithful account, and King had an absolute right
to suppose he would fulfill his obligation. (*Mead* v. *Bunn*,
32 N. Y. 275 ; Story on Part., § 172 ; Collyer, § 178.) Where
there is any mistake, or omission, or accident, or fraud, or un-
due advantage by which an accounting is in truth vitiated and
the balance incorrectly fixed, a court of equity will not suffer
it to be conclusive upon the parties. (Story's Eq. Jur., § 523 ;
*Farnham* v. *Brooks*, 9 Pick. 212 ; *Banow* v. *Rhinelander*, 1
Johns. Ch. 550 ; *Wharton* v. *May*, 5 Ves. 26; *Baker* v. *Spencer*,
47 N. Y. 562 ; *Chappeaulaine* v. *Dechiaux*, 4 Cranch, 306.)

The defendant was rightly compelled to account for the profits received by him in the completion of the contracts held by the firm at the time of the plaintiff's failure. (Lind. on Part. 1029 ; 1 Pars. on Part. 476, notes *b, c c ; Case* v. *Abeel,* 1 Paige, 393 ; *Washburn* v. *Goodman,* 17 Pick. 519 ; *McClean* v. *Kennard,* 9 Ch. App. Cas. 336 ; Collyer on Part., § 546 ; *Willett* v. *Blanford,* 1 Hare, 253 ; *Brown* v. *DeTastet,* Jacobs, 284 ; *Peacock* v. *Peacock,* 16 Ves. 57.)

*William F. Cogswell* for respondent. The plaintiff cannot be heard to allege that the settlement was fraudulent, for the reason that a court of equity will not assist a party whose deception is attributed to the want of diligence fairly to be expected from a reasonable person. (*Marsh* v. *Keating,* 2 Clark & Fin. 281 ; *Thomas* v. *Barton,* 48 N. Y. 193 ; *Upton* v. *Tribilcock,* 91 U. S. 54, 1 Story's Eq. Jur., § 197 ; *Smith* v. *Nelson,* 62 N. Y. 286 ; *Long* v. *Warren,* 68 id. 426.) The referee erred in charging the defendant with one-third of the profits upon contracts which had been entered into before the dissolution of the partnership, which were performed by the defendant with his capital and by his skill solely, after such dissolution. (*Willett* v. *Blanford,* 1 Hare, 253 ; *Simpson* v. *Chapman,* 4 De G., Mac. & G. 154 ; *Wedderburn* v. *Wedderburn,* 2 Keen, 752 ; *Collender* v. *Phelan,* 79 N. Y. 366.)

RUGER, Ch. J. The General Term reversed the judgment entered in favor of the plaintiff, upon an accounting between partners, on the ground that the referee erroneously allowed him the profits made upon certain unfinished contracts, which were completed after the assumed dissolution of the firm, occasioned by the bankruptcy of the plaintiff. This was held to follow from the effect, ascribed by that court, to the acts of the plaintiff and his receiver and assignee in bankruptcy, in collecting rent from the defendant for the use of the plaintiff's shops and machinery, in completing such contracts. The partnership agreement between the plaintiff and defendant provided for the formation of a firm to carry on the business of building bridges together under the name of T. Leighton & Co., at

Buffalo, the plaintiff to contribute shop-room, power and machinery as his share of capital in the enterprise and to receive one-third of the profits, and the defendant to devote his personal attention, contribute whatever additional capital was necessary to carry on the business, and have two-thirds of the profits. It was held that the collection of rent for the use of such property after plaintiff's bankruptcy, indicated an intention on his part to waive any interest in the profits thereafter made, in completing the unfinished contracts, and was equivalent to a withdrawal of the capital contributed by him to the firm. It was further held that the plaintiff did not thereby waive his interest in the assets of the firm, but that such interest consisted only of a share in the value of the contracts as they existed at the time of the bankruptcy, and that the defendant by his appropriation of the firm's contracts after plaintiff's bankruptcy, became liable to that extent only to the plaintiff. We are unable to agree with either of the propositions stated.

The action was brought for an accounting between partners and incidentally to set aside and vacate a written release of plaintiff s claim against the firm of T. Leighton & Co., executed by him to the defendant, on February 28, 1873, about eight months after the bankruptcy, and which was claimed to have been procured by the defendant through fraudulent representations as to the value of plaintiff's interest in the assets of the firm.

The referee found upon evidence, sufficient as we think to support the finding, the fact that such fraudulent representations were made by the defendant, and that the release was given by the plaintiff in reliance thereon. He thereupon held that the release was void, and ordered a general accounting as to all partnership matters between the parties, and the same was thereupon had before the referee, and resulted in a judgment in plaintiff's favor.

The rent in question appears to have been paid under the following circumstances: About the time of the plaintiff's bankruptcy, he and the defendant entered into a contract

whereby the defendant agreed thereafter, to pay $20 per day for the use of the shops, power and machinery, and subsequently in July, 1873, after the partnership work had been substantially completed, modified the same by agreeing to pay for such property, with some increased facilities, the sum of $35 per day. During the period covered by this contract the defendant occupied the premises in question not only for the purpose of completing the partnership work, but also in prosecuting an extensive business on his individual account. No objection was ever made by him to the payment of such rent, or claim that he was entitled to the possession of such shops, power and machinery free of rent by virtue of the partnership agreement. It does not appear that any thing was said at the time of making this agreement between the parties as to the special reasons why rent was required to be paid, or with reference to a transfer of the plaintiff's interest in the firm assets to the defendant, or a release thereof, or a withdrawal of plaintiff's capital from the firm, or the manner of completing or closing up its unfinished business.

We do not think under these circumstances that it was a necessary or legitimate deduction from the facts, that the acceptance of rent operated as a release of plaintiff's interest in the partnership assets, or as the indication of an intention to waive his claim to a share of the prospective profits which might arise from the uncompleted business of the firm. The contract to pay rent has a legitimate operation, as a modification of the partnership agreement, induced by the changed conditions effected by the plaintiff's bankruptcy, and the individual business expected to be thereafter carried on by the defendant, without extending it by implication to a subject not mentioned by either party at the time, and probably not within their contemplation. It is altogether probable that the plaintiff, induced by the misrepresentations of the defendant as to the prosperity of the firm business and his interest therein, was led to believe it had but little value, and was too insignificant to require, special stipulation or care; but it is nevertheless true that neither party did at that time enter into express

stipulations with reference either to the completed or incompleted business of the firm. When the firm became dissolved by the plaintiff's bankruptcy it was not permissible for the defendant to take new contracts and carry on the business in its name, and being apparently desirous of still continuing in the same line of business at the same place, it became necessary for him to first acquire that right from the plaintiff or his assignee.

Nothing appears in the case to rebut the inference that an amount was agreed upon as rent, apportioned to the individual business expected thereafter to be carried on by the defendant in the demised premises, and that inference is strengthened by the fact that a largely increased sum was paid as rent after the partnership business was completed. The finding that the express release of the plaintiff's interest in the firm assets to the defendant, was fraudulent and void, would seem to require as a necessary consequence, a similar finding as to the validity of an implied release, founded apparently upon acts induced by the same influences. The implication of a contract between parties upon a subject to which their attention has been directed and which they have omitted to provide for, by express stipulation, should not be made by a court, except to enforce a manifest equity, or to reach a result which the unequivocal acts, of the parties indicate an intention to effect.

Having arrived at the conclusion that the receipt of rent did not have the effect claimed for it by the respondent, it remains to be seen whether any error occurred on the trial which required a reversal of the judgment by the General Term.

It is claimed that such error was committed in allowing the plaintiff to recover the profits made after the dissolution of the firm as shown by the amount actually received, instead of awarding him the value of the pending contracts at the time of dissolution. Reference to the authorities does not justify the claim made on behalf of the defendant. The elementary writers concur uniformly in the proposition that the bankruptcy of one member of a firm, works a dissolution of the partnership only to the extent of disabling it from entering into any new

engagements or incurring new obligations, except those required to complete its unfinished business, and wind up its affairs. The bankrupt still remains liable upon all existing contracts, and his interest in the partnership as well as his individual estate may be resorted to for the enforcement of such liabilities. The assignee of a bankrupt member of a firm becomes tenant in common of its assets with the solvent partners, and is entitled to an accounting and to receive the bankrupt's share, whatever it may be, after the payment of the partnership liabilities and a settlement of their accounts. (Lindley on Partnership, 930, 848, 849.) He has no right to the possession of the assets, or to interfere in the conduct of the business by the solvent partners in winding up its affairs, but is entitled to an accounting not only with respect to its completed business, but also as to all profits thereafter made. upon its unfinished contracts or enterprises, and at his option to such as may be realized from new business entered into and carried on with the assets of the firm. (Lindley on Partnership, 831, 832, 931 ; *Crawshay* v. *Collins*, 15 Ves. 218.)

After the dissolution by death or bankruptcy the solvent or surviving members become trustees of the assets for the purpose of winding up its affairs and distributing its effects, and they will not be allowed to reap a profit made by the use of the partnership assets after dissolution. (*Case* v. *Abeel*, 1 Paige, 393 ; *Murray* v. *Mumford*, 6 Cow. 441.) As a general rule surviving or solvent partners cannot take the assets of the firm at a valuation as of the time of the dissolution. They have a right to the possession and control of the assets, but it is for the purpose only of satisfying the liabilities of the firm and turning the effects into money in the manner most advantageous to the interests of all concerned. (*Case* v. *Abeel, supra ;* Collyer on Part., § 199 ; Pars. on Part., 505 ; *McClean* v. *Kennard*, L. R., 9 Ch. App. 342.) If they delay closing up its affairs, and paying off the retiring member they render themselves liable for the profits made after dissolution at the option of the representatives of such member. (Story on Part., § 343.) It is said that solvent partners cannot resist a bill

by an assignee for a share of the profits of a subsequent trading on the ground that the assignee did not require an immediate settlement, because it is no more the duty of the assignee to require this, than it is the duty of the solvent partners to make it (Pars. on Part. 505), and when the solvent partner omits to close up the partnership, and pay off the retiring partner, he is liable for any profits made by the continuance of the business with the firm assets. (Lindley on Part. 831).

If at the time of such bankruptcy there are adventures, contracts, or enterprises, outstanding unperformed, the assignee is required to wait until they are concluded and adjusted, and then collect the share or interest of the bankrupt as shown by the result. (Pars. on Part. 503.)

It was conceded in the case of *Collender* v. *Phelan* (79 N. Y. 372) that the executors of a deceased partner were entitled to the profits made upon contracts pending, unperformed at the death of their testator, and thereafter completed; but in that case, under peculiar circumstances, it was held that such interest had passed to the surviving partner by virtue of certain transfers of the partnership assets made to him, by the executors, and that such profits could not, in that case, thereafter be recovered by the executors. The case is not an authority for the defendant's contention here. In the case of *McClean* v. *Kennard* (L. R., 9 Ch. App. 336), it was held that upon the death of a member of a firm, his estate was entitled to share in the profits of a contract unperformed at the time of death, and that those profits were to be the actual profits ascertained when the contract was completed, and not by valuation or sale of the contract as of the time of death.

Thus, as the result of an examination of the authorities, we are clearly of the opinion that upon the dissolution of a firm by the death or bankruptcy of one of its members, it is the duty of the surviving or solvent members to take possession of the firm assets and perform its contracts, extinguish its liabilities and close up its business, in the manner most advantageous to the interests of all the parties concerned; that it is the right

of the representatives of a deceased or bankrupt partner to share in the profits of all business unfinished at the dissolution, but completed afterward, and that a valuation of such business as of the time of the dissolution will not be required unless peculiar circumstances exempting the particular case in equity from the operation of the general rules, exist. ( *Wedderburn* v. *Wedderburn*, 22 Beav. 84 ; *Simpson* v. *Chapman*, 4 DeGex., M. & G. 154 ; *Case* v. *Abeel, supra;* Collyer on Part., § 199 ; Pars. on Part. 505.)

The circumstances existing in this case do not render it an exception, or authorize upon an accounting, any allowance to the solvent partner for advances made, or services rendered, in closing up the partnership affairs.

At the time of the plaintiff's bankruptcy the firm was solvent, having accumulated property to the amount of nearly $50,000, which remained in the possession of the solvent partner applicable to the payment of partnership obligations, the expense of completing its unfinished business, and satisfying any balance owing by the bankrupt to the solvent partner. By the terms of the original partnership agreement the defendant was to give his personal attention and services to the conduct of the business, and have the direction and control thereof, and he did no more than this, after the plaintiff's bankruptcy. The plaintiff was under no obligation to devote his services to the partnership, and contributed after his bankruptcy, in the performance of his partnership obligations, all that he was required to do before. The firm occupied the same premises, and used the same power, tools and machinery after as before the bankruptcy, and not a circumstance appears in the case upon which any equity can be based calling for an allowance to the defendant, for capital furnished or services rendered for the firm's benefit. The defendant has done nothing more than to perform the duty which the law imposed upon him of winding up the affairs of the partnership after its dissolution, and in this case he has been relieved from the necessity of advancing means or incurring risks in

closing up such business by its unquestioned financial ability to respond to all engagements.\*     \*     \*     \*

The order of the General Term should be reversed, and the judgment entered upon the report of the referee affirmed, with costs.

All concur, except DANFORTH, J., not sitting.

Order reversed, and judgment affirmed.

---

\* The omitted portion of the opinion is taken up with a consideration of alleged errors committed by the referee, in rejecting items of expense alleged to have been incurred by the defendants ; it contains nothing of general interest.