## ARTHUR v. BARON DE HIRSCH FUND.

(Circuit Court of Appeals, Second Circuit. February 25, 1903.)

No. 66.

**1. CONTRACTS—BROKERS—PURCHASE OF REAL ESTATE—IMPLIED TERMS.**

Defendant, in order to aid the poorer class of Hebrews in settling in the country, executed a written contract with plaintiff by which it agreed to loan plaintiff a certain sum to be used in the erection of houses on land belonging to plaintiff in the country, on which plaintiff agreed to give a mortgage to secure the loan. It was further stipulated that plaintiff should sell the houses to such purchasers as defendant should name, provided the purchaser would assume the payment of the mortgage to defendant, pay 10 per cent. of the price in cash, and execute a second mortgage to the plaintiff for the balance. Plaintiff was entitled to fix the prices for the houses and the terms of payment, and left free, unless the purchasers complied with such conditions, to sell to whom he chose. *Held* that, since the contract in terms did not obligate defendant

to furnish purchasers or require that the purchasers named by it should comply with plaintiff's conditions, and the contract being otherwise beneficial to plaintiff, an agreement by defendant to furnish such purchasers would not be implied.

**3. SAME—WRITTEN CONTRACT—PRIOR NEGOTIATIONS—EVIDENCE.**
Where the contract between two parties is reduced to writing, evidence of prior negotiations between them is inadmissible in an action thereon, except for the purpose of aiding the court to interpret the instrument.

In Error to the Circuit Court of the United States for the Southern District of New York.

Henry G. Ward, for plaintiff in error.

Geo. W. Wickersham, for defendant in error.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The plaintiff in error, who was the plaintiff in the court below, sued to recover damages for breach by the defendant of an alleged contract on the part of the defendant to furnish purchasers for certain houses which the plaintiff agreed to erect. The trial judge directed a verdict for the defendant at the close of the plaintiff's evidence, upon the ground that the plaintiff had failed to establish the contract alleged. This ruling was based upon the interpretation of a written contract between the parties executed August 15, 1899.

The plaintiff is a contractor and builder. The defendant is a charitable corporation organized for the purpose of aiding poor Hebrews to better their condition.

The subject of the contract was first introduced to the defendant by C. Benton Dix, a broker, who, in June, 1899, advertised in the New York papers that he would give inducements to factories to locate at a certain place. In response to this advertisement, the manager of the defendant called and informed him that the defendant was interested in getting the poorer class of Hebrews who live in crowded tenement districts to move into the country, and that he knew of certain factories which he thought could be induced to establish themselves in the country, mentioning, among others, the name of Max Ernst, a clothing manufacturer. Dix thereupon went to see Ernst, and Ernst concluded to go with defendant's manager and president to New Orange, N. J., and look over property there. This visit and subsequent negotiations between Dix and Ernst resulted in the making of a contract on July 18, 1899, between Ernst and the New Orange Industrial Association, a corporation which owned land at New Orange, whereby that association agreed to give Ernst a factory in New Orange for a term of years free of rent in consideration of his establishing his operations there and having at least 250 persons at work in said factory on or before January 1, 1900, and of his agreement to employ in said factory building an average of 250 people for a period of five years from said date. In the summer of 1898 the plaintiff had built, under employment by the New Orange Industrial Association, 40 houses at New Orange, and later—in December, 1898—he had purchased from the said association 310 other lots of ground at the price of $325 per lot. To enable

him to sell these houses readily, it was desirable that persons should be induced to come to New Orange and settle. In view of the contract with Ernst, it was necessary to provide houses at New Orange for the 250 people whom he was to employ there, and, as the Baron de Hirsch Fund was interested in getting the poorer Hebrews—who would be employed at such place—to move from the crowded districts of New York into the rural districts, it proposed to assist in causing the houses to be built. Dix thereupon introduced defendant's officers to the plaintiff Arthur, and that introduction resulted in the agreement embodied in the contract dated August 15, 1899. By this contract the plaintiff agreed:

"(1) To erect one hundred houses in New Orange upon certain designated lots owned by him on or before February 1, 1900.

"(2) To furnish defendant with the policy of the Land Title & Trust Company of Philadelphia, insuring defendant against any loss by reason of any mechanic's lien or material claim filed against the premises by reason of plaintiff's failure to build the houses in accordance with the plans and specifications and within the time specified, and also the title policy of the New Jersey Title & Abstract Company of Jersey City.

"(3) Prior to December 1, 1899, to have fifty houses ready for occupancy, and prior to February 1, 1900, the remaining fifty.

"(4) To pay a certain penalty in case of failure to complete the houses within the time specified."

The defendant agreed:

"(1) To loan plaintiff $80,280 to be expended in the erection of the said houses, taking plaintiff's bond and mortgage for said sum simultaneously with the execution of the contract, payable on or before February 1, 1900, with interest at two per cent. per annum until advances were made, and at four per cent. per annum from the date of advance.

"(2) To deposit the entire sum of $80,280 with the Land Title & Trust Company of Philadelphia upon receiving its policy of insurance as aforesaid, which sum, together with the further amount of $30,000, which was to be deposited or secured by plaintiff to the trust company, should constitute a fund out of which said company should pay the cost of the lands and buildings as the buildings progressed.

"(3) On the completion of the buildings—there being no liens, etc., against the same—to surrender the said bond and mortgage and accept in lieu thereof individual bonds secured by mortgages upon the one hundred, several lots made and executed by the owner at that time of said premises, to be for the amount of sixty per cent. of the value of the said premises, respectively, including the lots and buildings, to bear interest at the rate of four per cent. per annum and to be in the form specified; provided plaintiff should furnish title policies with each individual mortgage."

It was mutually agreed:

"(1) That ten per cent. of the amount deposited by the defendant should be retained by the Land Title & Trust Company until the buildings were fully completed, to be held as indemnity to meet any penalties assumed or incurred, or until the value of the houses should be appraised, and that any excess over sixty per cent. of such appraised value should be returned to the defendant."

Then followed the paragraphs which are more directly related to the present controversy, as follows:

"IX. It is understood and agreed that as each house is sold the party of the first part agrees to execute and deliver a good and sufficient deed for same, subject to the mortgage made as aforesaid to the party of the second part, to such person or persons as the party of the second part shall name,

provided such purchaser assumes the payment of said bond and mortgage and pays ten per cent. of the purchase price of the house and lot in cash, and also executes to the said party of the first part a second bond and mortgage for the balance of the purchase price, with interest at five per cent. per annum.

"X. The party of the first part further agrees as soon as each house is completed, provided the party of the second part shall not name the grantee to whom the said premises shall be conveyed, that he will let or lease for the party of the second part any one of the houses in group A at the rate of eight dollars per month, in group B at the rate of ten dollars per month, and in group C at the rate of twelve and $50/100$ dollars per month, said rents to be payable in advance on the first day of every month.

"XI. Inasmuch as certain persons whom the party of the second part proposes to name as purchasers or occupants of the said houses desire to move to New Orange prior to the completion of the said houses, the party of the first part hereby agrees to let or lease to any person so named by the party of the second part any one of the houses now built owned by the said party of the first part and not rented, at the same monthly rental as above set out, said houses, however, to be only rented to said tenants until the houses to be erected in accordance with this agreement are ready for occupancy."

The plaintiff completed the houses within the specified time, and they were approved by the defendant as conforming to the contract, were by agreement valued at $133,800, and the defendant advanced to the plaintiff 60 per cent. of that amount, being $80,280 on first mortgage. The scheme of inducing employés to purchase the houses fell through, and upon completion of the houses the defendants did not provide purchasers for them. Thereupon, after notice to the defendant, the plaintiff advertised and sold the houses at public sale, bidding them in himself for a trifling sum.

It is contended for the plaintiff in error that the effect of the three paragraphs is to raise by implication the contract alleged by the complaint; that, if not implied, it was established by the extrinsic evidence offered by the plaintiff and received upon the trial; and that the trial judge erred in ruling to the contrary.

The contract which the parties reduced to writing was an elaborate recapitulation of the obligations assumed by them respectively. By its terms, among other things, the plaintiff undertook to sell to such purchasers as the defendant should name, provided the purchaser should assume the payment of the first mortgage to the defendant, pay 10 per cent. of the purchase price in cash, and execute a bond and second mortgage for the balance; and the plaintiff was free, unless the purchasers named complied with these conditions, to sell to whom he chose. The contract was silent as to the terms of purchase as between plaintiff and purchasers, and left the prices of the houses and the terms of payment optional with the plaintiff. The defendant did not in terms undertake to furnish any purchasers, nor that any of the purchasers it might name should comply with these conditions. The contention is that, because the plaintiff promised to sell to such person or persons as the defendant should name, an obligation is necessarily implied on the part of the defendant to so name purchasers, or, in effect, to procure them. This contention would be more persuasive if the contract had secured no benefits to the plaintiff in the absence of such an obligation, and if it had enabled the defendant to enforce the plaintiff's covenant to sell to the

purchasers named by the defendant. The general rule applicable to the question to be determined is expressed in Hudson Canal Co. v. Pennsylvania Coal Co., 8 Wall. 288, 19 L. Ed. 349, as follows:

"Undoubtedly necessary implication is as much a part of an instrument as if that which is so implied was plainly expressed, but omissions or defects in written instruments cannot be supplied by virtue of that rule, unless the implication results from the language employed in the instrument, or is indispensable to carry the intention of the parties into effect."

There are many cases in which contracts have been construed to impose an obligation not expressed upon one of the parties, when, in its absence, there would have been no consideration for the undertaking on the part of the other party; but those cases in which particular contracts have been held to imply such an obligation do not greatly aid the present inquiry. "It is a cardinal principle that every agreement or covenant must be interpreted according to its peculiar terms, and so as to carry out the intent of the parties; and it follows that the ruling upon and the interpretation of one agreement will seldom aid in the construction of another, except as it may illustrate some general rule of interpretation applicable to both." Booth v. Cleveland Mill Co., 74 N. Y. 21.

Undoubtedly, the parties to the present contract contemplated and expected that the defendant would find purchasers for the houses, and knew that the failure or refusal of the defendant to do so would deprive the plaintiff of some of its anticipated benefits; but that fact, and the consideration that, although the plaintiff covenanted to sell to purchasers named by the defendant, the defendant did not covenant to find purchasers, are not enough, in view of the other provisions by which substantial benefits were secured to the plaintiff to raise the implied promise.

"When it is apparent that the parties had the subject in question in mind, and either has withheld an express promise in regard to it, one will not be implied." Zorkowski v. Astor, 156 N. Y. 393, 50 N. E. 983. That the parties contemplated that the defendant might not find purchasers is plain, because the contract provides that, if the defendant does not name the grantee "as soon as the house is finished," the plaintiff is to let or lease every one of the houses at specified monthly rentals, no term of lease being fixed. It is true this provision contemplates that the houses are to be leased to tenants to be secured by the defendant, but nevertheless it denotes their understanding that the defendant might not secure purchasers, and in that case that the plaintiff, while under an obligation to accept the tenants, should not be required to accept them for any definite period. This provision is quite inconsistent with the theory that the parties understood or intended that the defendant should be bound to produce purchasers.

The agreement sought to be implied is, in effect, one that the defendant would purchase the houses. If this was the understanding of the parties, why was this most important covenant omitted? And if it is to be implied, how does it happen that the contract contained no provision obligating the plaintiff to sell, but left it within the power of the plaintiff to exact terms to which no purchaser might be

willing to accede? Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that, having expressed some, they have expressed all, of the conditions by which they intended to be bound. The contract seems to have been carefully framed so as to give the defendant the privilege of finding purchasers or tenants for the houses without obligating it to do so, and at the same time to permit the plaintiff to burden the privilege with conditions which would reduce it to a nominal one. Both parties manifestly intended as to these matters to trust to the good faith of the other. The contract seems to have been carefully framed to meet the contingencies that the defendant might not be able to find purchasers, or, if it should find them, that the purchasers might not be acceptable to the plaintiff.

· The evidence introduced by the plaintiff in respect to the negotiations between the parties prior to the contract and the statements made therein by the defendant was not admissible, except so far as it tended to aid the court in the interpretation of the instrument. Except for this purpose, it was inadmissible, as tending to insert a new provision in a contract between the parties which they had reduced to writing, and which it must be assumed embodied the final expression of their intentions.

We find no error in the rulings complained of, and the judgment is affirmed.

### On Rehearing.

#### (April 16, 1903.)

PER CURIAM. We have carefully considered the petition for a reargument and the briefs accompanying it, but our former conclusions remain unchanged. This is not an action to reform the agreement between the parties, but proceeds upon the theory that an implied obligation is to be read into the agreement in substance to the effect that the defendant would purchase (through purchasers to be found by it) the houses which the plaintiff was to build. Our conclusion that such an obligation is not to be implied was reached in part upon the consideration that the agreement did not obligate the plaintiff to sell to such purchasers, because it left him at liberty to fix his own terms, and thus optionally to defeat the sale. If there was an understanding between the parties as to the price and terms, it was not incorporated into the agreement, which must be assumed to embody the final understanding of the parties. While the agreement is to be read in the light of such extrinsic facts as are competent in aid of its correct interpretation, its terms cannot be supplemented by evidence of a prior parol agreement. We recognize the hardship which has resulted to the plaintiff from the failure to sell the houses, but this was one of the contingencies for which the contract did not provide.

The application for a reargument is denied.