[Civ. No. 1264.  First Appellate District.—May 13, 1913.]

LOYALTON ELECTRIC LIGHT COMPANY (a Corporation), Appellant, v. CALIFORNIA PINE BOX & LUMBER COMPANY (a Corporation), Respondent.

CONTRACTS—CONSTRUCTION OF AGREEMENT TO FURNISH REFUSE OF BOX FACTORY FOR FUEL.—In this action by an electric light company against the owner of a box factory for breach of a contract to furnish the excess of the refuse of the factory to the light company for fuel, it is found that the contract between them does not, either expressly or by implication, impose upon the owner of the box factory the obligation to produce any given amount of excess or refuse, or any refuse or excess at all.

ID.—CONSTRUCTION OF CONTRACT—ENLARGING BY IMPLICATION.—Where parties have entered into written engagements which industriously express the obligations which each is to assume, courts should be reluctant to enlarge them by implication as to important matters. The presumption is that having expressed some they have expressed all of the conditions by which they intended to be bound.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco.  J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

W. E. F. Deal, and Curler & Martinson, for Appellant.

Pillsbury, Madison & Sutro, for Respondent.

HALL, J.—This is an appeal from a judgment entered for defendant upon sustaining a demurrer to plaintiff's amended complaint, plaintiff having refused to further amend.

The action is for damages for a breach of a contract set forth in the complaint and entered into between defendant and the Plumas Box and Lumber Company, which has assigned its rights under said contract to plaintiff.

The defendant is the owner of a box factory, while plaintiff owns and operates an electric light plant. The contract sued upon in plain language expressly obligates defendant: 1. To employ a fireman to keep up steam, and to permit appellant to use such steam; 2. To permit appellant to use a portion of the room in respondent's powerhouse; 3. To permit appellant to erect and maintain poles and wires over the lands of respondent; and 4, To permit appellant "to use for fuel any refuse of the box factory which the first party" (respondent) "may not require for generating steam for its own purpose."

It expressly obligates appellant: 1. To supply itself with any additional labor or fuel which it may need for the purpose of generating steam; and 2. To furnish respondent with such electric lights as it may require in its factories, etc., not to exceed in all two hundred lights, at the price of ten cents per month for each light. The contract is dated April 20, 1904. The defendant has not operated its box factory since May 6, 1908, but ever since said date the box factory has been shut down, in consequence of which no "refuse of the box factory" has been produced.

The theory of appellant is that under the contract respondent was and is obliged to operate its box factory in order to produce refuse of the box factory, to the end that appellant may use for fuel any such refuse as respondent may not require for generating steam for its own purposes.

This theory is entirely untenable. There is in the contract no express obligation to operate the box factory imposed upon respondent. Such obligation, if it exist at all, is imposed by implication only. Even the permission given to use refuse is only to use such as may not be required by respondent for generating steam for its own purposes. It is thus apparent that in order to give any value to the obligation claimed to be imposed by implication, we must go a step further and imply

an obligation, not only to operate the box factory, but to operate it in such a way or to such an extent as to produce more refuse than would be required by respondent for its own purposes. The question then at once suggests itself, How much more, What amount of excess refuse is required to be produced? The impossibility of answering these questions demonstrates the unsoundness of appellant's theory as to the effect of the contract.

It doubtless was expected by the contracting parties that there might or probably would be an excess of refuse produced, and consequently provision was made permitting appellant to use such excess; but no language can be found in the contract which either expressly or by implication imposes upon respondent the obligation to produce any given amount of excess of refuse, or any excess at all, or any refuse at all.

"Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that having expressed some they have expressed all of the conditions by which they intended to be bound." (*Arthur* v. *Baron de Hirsch Fund,* 121 Fed. 791, [58 C. C. A. 67]. See, also, *Maryland* v. *Railroad Co.,* 22 Wall. 105, [22 L. Ed. 713] ; *Hudson Canal Co.* v. *Pennsylvania Coal Co.,* 8 Wall. 276, [19 L. Ed. 349] ; *Green* v. *American Cotton Co.,* 112 Fed. 743; *Nims* v. *Vaughn,* 40 Mich. 356; *Amalgamated Gum Co.* v. *Casein Co. of America,* 146 Fed. 900, 913.)

The learned trial judge correctly interpreted the contract when he sustained the demurrer to the complaint.

The judgment is affirmed.

Lennon, P. J., and Kerrigan, J., concurred.