[L. A. No. 13001. In Bank.—December 29, 1931.]

E. Y. FOLEY, Appellant, v. J. M. EULESS et al., Respondents.

Frank Kauke for Appellant.

Julius Hansen and Gallaher & Jertberg for Respondents.

THE COURT.—This case is before us upon hearing granted after decision by the District Court of Appeal, Fourth Appellate District, sustaining a judgment entered in favor of defendants after demurrer sustained to the amended complaint without leave to amend. The hearing was granted to enable this court to give further consideration to the question as to whether the agreement upon which the action was based was a mutually binding contract by which defendants agreed by implication, as plaintiff contends, to deliver or cause to be delivered to plaintiff the entire crop of raisins grown by the members of the pool referred to therein. We are now satisfied that the term for which appellant contends cannot fairly be implied from the contract as a whole or from any particular provision thereof. It would be to ask the court to go a long way in contract making. The appellate court properly held that the contract

left to the judgment or election of respondents the quantity of raisins to be delivered to appellant's packing plant. The action is not one for reformation of the contract. If the provision was inadvertently or improperly omitted, the procedure would have been for plaintiff to seek a reformation upon proper pleadings and proof establishing his right thereto rather than to ask the court to make a contract in the premises. We, therefore, adopt the portion of the opinion of the District Court of Appeal, written by Mr. Justice Marks, which deals with the obligatory effect of the contract on respondents as part of the opinion of this court. Said opinion is as follows:

"Appellant filed suit in the court below seeking the recovery of $100,000 damages for an alleged breach of contract. Respondents filed a general and special demurrer to an amended complaint, which demurrer was sustained without leave to amend. From the judgment entered in favor of respondents appellant prosecuted this appeal.

"A written contract bearing the date of October 9, 1929, forms the basis of appellant's cause of action. E. Y. Foley, the first party named therein, was a packer and shipper of dried fruits, with a packing house in Fresno, California. Respondents are described in the contract as 'J. M. Euless and Henry Dermer, associated together as the Euless-Dermer Pool of the same county and State, parties of the second part'. The contract is signed by the respective parties individually without any indication, as far as the signatures are concerned, that they were acting in a representative capacity. The body of the agreement discloses that the second parties were acting as the representatives of a number of growers of raisin grapes who were associated together and acting for their joint benefit and protection under the name of the Euless-Dermer Pool. As the decision of this case will turn on the construction to be placed upon this contract it will be necessary for us to detail its provisions.

"The members of the pool were engaged in raising Thompson Seedless, Sultana and Muscat grapes and curing them into raisins. They desired to secure packing and marketing facilities for their crops. To effect this purpose appellant agreed to receive at his packing house such of the raisins of the pool members 'which the said second parties [respondents] will have the members of the said above-men-

tioned pool deliver to the first party's [appellant's] packing house not later than January 1st, 1930'. Upon such delivery appellant agreed to weigh the raisins and grade them as either extra-standard, standard or sub-standard. In case of any disagreement as to the grades, a regrading by the representatives of the two parties to the contract and a third grader selected by the pool's representative was provided for. Appellant obligated himself to issue to each pool member so delivering raisins, a negotiable warehouse receipt and a standard weight tag, showing the amount, kind and grade of raisins so delivered. Appellant further agreed that he would put the raisins through the standard processes to prepare them for market and that he would pack them either in cartons or twenty-five pound boxes as and when directed by respondents. Appellant agreed to store, warehouse and protect them from the elements, and that he would be responsible for the safety of the raisins and guard them against theft and insure them against loss by fire at his own cost and expense. Appellant further agreed to secure purchasers for the raisins. All bids were to be submitted to an executive committee of the pool consisting of respondents and one other, and no bid could be accepted without the consent of the committee. When sold the purchase price was to be paid to the pool. He further agreed that upon the sale of the raisins by the executive committee he would load the raisins on cars for shipment. All expenses of handling, processing, packing, preparing for market and marketing the raisins were to be paid by appellant except that the 'pool shall pay the regular buyer's two per cent (2%) cash discount and a broker's commission incurred in the sale of the raisins'. It was further agreed that all drafts drawn for the payment of the raisins should be drawn in favor of the pool. The contract also contained the following provisions:

" 'It is further understood and agreed by and between the parties hereto that in consideration of the said second parties obtaining the delivery of the pool members' raisins to the said first party's packing house, that the said first party will not handle any other natural dried raisins of Thompson Seedless, Sultanas and Muscat varieties, during the term of this contract at his above mentioned packing plant.

" 'The said second parties will pay to the said first party therefor, the sum of 1¼c per pound on all raisins packed in

twenty-five pound boxes and 1½c per pound on all raisins packed in cartons and that the said consideration shall be paid to the said first party by the said second parties, as the said raisins are sold and paid for.

" 'It is understood and agreed that this agreement shall continue in full force and effect until all of the raisins delivered to first party by the Pool members shall have been processed and sold and delivered to the buyers of the same.'

"A copy of the contract is attached to the amended complaint as an exhibit.

"It is alleged in the amended complaint that the pool members raised and cured, and respondents had under their control, ten thousand tons of the varieties of raisins mentioned in the contract; that appellant could and would have received all of these raisins at his packing plant prior to January 1, 1930, and 'could and would have weighed and graded all said raisins, and could and would have performed all the necessary work of putting the said raisins through the standard process, and could and would have prepared said raisins for marketing, and could and would have packed all said raisins in cartons and boxes, and could and would in all respects and particulars have handled said raisins in the manner mentioned and called for in and by said contract' if he had not been prevented in so doing by the respondents. It is further alleged that respondents caused the growers to deliver four hundred tons of the raisins to appellant's warehouse, 'but said defendants failed and refused to deliver or cause to be delivered, and did not deliver, nor cause to be delivered, nor suffer or permit to be delivered, at plaintiff's packing plant or to plaintiff, any other or further amount of the raisins of said pool members or any raisins, and said defendants did advise, direct, and cause the said pool members to refrain from delivering other or further raisins to plaintiff, or at said packing plant, and that no raisins, except said 400 tons, or thereabouts, were ever delivered or caused to be delivered or permitted by defendants to be delivered at said packing plant'. It is further alleged that respondents 'refused to permit or allow plaintiff to process, pack or otherwise prepare for marketing any of said raisins, either of said 400 tons which were so delivered, or of any part of the remaining 9600 tons of said pool members' raisins, or other raisins; and said defendants prevented

plaintiff from doing anything relative to the processing, packing or preparing for marketing of raisins'. It is further alleged that on January 1, 1930, respondents notified appellant that they would not proceed under nor comply with the terms of the contract and that they repudiated the same and would not permit appellant to proceed thereunder and prior to January 20, 1930, caused the four hundred tons already delivered to be removed. It is not alleged that appellant graded or insured the four hundred tons of raisins which were delivered.

"This appeal presents two questions for our consideration: First, the liability of respondents to appellant, if any, as to the nine thousand six hundred tons of raisins which were not delivered to appellant's warehouse, and, second, as to the four hundred tons which were delivered but were subsequently removed.

"Appellant concedes that the contract, by its express terms, did not obligate respondents to have delivered to the warehouse all, or any definite quantity of, the growers' raisins. He contends that as the agreement prohibited him receiving at the described packing house any other raisins, of the varieties named, and that as the agreement was to remain in force and effect until all the raisins delivered had been processed, sold and delivered to buyers, there was an implied covenant on the part of the respondents to cause all of the growers' raisins to be delivered to him.

"Courts have been careful not to rewrite contracts for parties by inserting an implied provision, unless, from the language employed, such implied provision is necessary to carry out the intention of the parties. No implied condition can be inserted as against the express terms of the contract or to supply a covenant upon which it was intentionally silent. The rule is thus stated by the court of appeals of New York in *Genet* v. *Delaware & Hudson Canal Co.*, 136 N. Y. 593 [19 L. R. A. 127, 32 N. E. 1078, 1081]: 'I know very well that implied promises are to be cautiously and not hastily raised. What they are was very well stated in *Scrantom* v. *Booth*, 29 Barb. (N. Y.) 174, in *Allamon* v. *Albany*, 43 Barb. (N. Y.) 36, and in *Booth* v. *Cleveland Roll. Mills Co.*, 6 Hun (N. Y.), 597. They always exist where equity and justice require the party to do or to refrain from doing the thing in question; where the covenant on one

side involves some corresponding obligation on the other; where by the relations of the parties and the subject matter of the contract a duty is owing by one not expressly bound by the contract to the other party in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott* v. *State,* 99 N. Y. 101 [1 N. E. 242]), and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate that they intended to effect (*King* v. *Leighton,* 100 N. Y. 386 [3 N. E. 594]).'

"This rule was recognized in the case of *Loyalton etc. Co.* v. *California etc. Co.,* 22 Cal. App. 75 [133 Pac. 323, 324], where it was said: 'Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that having expressed some they have expressed all of the conditions by which they intended to be bound.'

"With these rules of law in mind we cannot conclude that there was an implied obligation on the part of respondents to cause the pool members to deliver all of their raisins to appellant. The omission of such a covenant might have been intentional on the part of respondents, as the quantity of raisins to be delivered might be determined by them and be governed entirely by the good faith of appellant in performing his obligations and his success in marketing those delivered. The executed contract was clear in its terms and left to the judgment of respondents the quantity of raisins to be delivered. Had appellant desired a covenant requiring a given number of tons of raisins or all of the growers' raisins to be delivered to him, he should have had such a provision inserted in the contract. We cannot rewrite the agreement for him."

The foregoing discussion of the District Court of Appeal is also applicable to the 400 tons of raisins which were actually delivered by the growers to plaintiff's packing plant, but which, it is alleged, defendants "caused to be taken away and removed from said packing plant" prior to Janu-

ary 20, 1930. As to said raisins it is also alleged that defendants "refused to allow or permit plaintiff to process, prepare for market, or sell any of said raisins, or do anything relative to said raisins other than to grade, keep, store and protect said raisins" to the time of removal. By the terms of the contract defendants were given an option to avail themselves of plaintiff's offer to process and market the pool members' raisins as they should elect. By the mere delivery of raisins to plaintiff, they did not lose the right to decide whether plaintiff should proceed to prepare the raisins for market and endeavor to sell them, but said raisins remained subject to the order of defendants or the pool members. That the growers had the right to remove the raisins is further indicated by the fact that the agreement expressly provided that standard weight tags and negotiable warehouse receipts should be issued to the various pool members upon delivery of raisins by them. The contract contains no language by which defendants engaged, either expressly or impliedly, that the pool members or their indorsees should not exercise the rights which the law attaches to such receipts, including the right of removal. It may be that plaintiff could recover from the growers the reasonable charges of storing and grading for the time the raisins remained in his warehouse, but the present action is not designed for that purpose.

Judgment affirmed.