[Civ. No. 11475. First Dist., Div. One.—June 3, 1941.]

COUSINS INVESTMENT COMPANY (a Corporation), Plaintiff and Appellant, v. HASTINGS CLOTHING COMPANY (a Corporation), Defendant and Appellant.

Oscar Samuels and Tevis Jacobs for Plaintiff and Appellant.

Heller, Ehrman, White & McAuliffe, Samuel S. Stevens and F. Whitney Tenney for Defendant and Appellant.

KNIGHT, J.—This is an action for the recovery of rental claimed to be due for the use of real property. The trial court gave judgment for plaintiff, and each side appealed, the defendant contending that it is not liable in any amount, and plaintiff complaining that the amount of the rental awarded

is inadequate. By stipulation the appeals were consolidated and are presented in one record.

The property involved is a four story building located on the northwest corner of Post and Kearney Streets in San Francisco, which for twenty-two years preceding April 26, 1939, had been occupied by the defendant Hastings Clothing Company in carrying on a men's clothing and furnishing business. During the last six years of its tenancy, defendant occupied the premises under an amendatory lease, which provided for the payment as rental of 5½ per cent of the gross income of the defendant's business, with a $4,000 monthly minimum. The lease expired on June 30, 1939, and on April 26, 1939, two months and four days prior to the expiration of the lease, defendant moved its business to another location. It paid the minimum rental for the full term of the lease, and thereafter plaintiff brought this action to recover the percentage rental which it claimed it would have received if defendant had remained in business on the premises until the expiration of the lease. Plaintiff concedes that there is no express provision in the original or modified lease requiring defendant to remain in business on the premises until the expiration of the lease, and that the trial court's decision in its favor is based entirely upon the theory—and it so appears from the conclusions of law—that there was an implied covenant requiring defendant so to do, and that this implied covenant was violated. In accordance with such theory judgment was entered against defendant for $8,426 as rent, and $750 attorneys' fees, plus costs. The amount of rental was determined by computing the percentage of the average gross income for the corresponding period of the years 1934–1938, inclusive, allowing two weeks as a reasonable period for the removal by defendant of its merchandise and fixtures; that is, four days in April, all of May, and fourteen days in June of each year the percentage rental was in effect.

It may be stated generally that implied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made. Furthermore, implied

covenants can be justified only upon the ground of legal necessity arising from the terms of the contract, or the substance thereof, and the circumstances attending its execution; and the implication from the words must be such as will clearly authorize the inference of an imputation in law of the creation of a covenant. (14 Am. Jur., pp. 490, 491.)

The essential facts of the present case may be stated as follows: Defendant has been engaged in the same line of business in San Francisco for over eighty-five years; and as stated, occupied the building owned by plaintiff for twenty-two years. The rent paid from 1922 to 1924 was at the rate of $1750 a month, without taxes; from 1924 to 1929, the rent was $2,750 per month without taxes. On December 17, 1925, the parties entered into a lease for ten years, commencing July 1, 1929, and ending June 30, 1939, at a rental of $5,500 a month, plus all taxes levied and assessed against the demised premises, which amounted to approximately $10,000 a year. Defendant continued in possession under said lease and paid the rental provided for therein, but on May 9, 1933, it wrote a letter to plaintiff, stating that it had sustained losses in its business as a result of the depression, and requested that it be relieved from the obligation contained in said lease to pay the fixed rental of $5,500 and taxes, and that it be permitted to pay a fixed monthly rental in an amount less than $5,500, a percentage of the gross receipts of its business, and the taxes. The negotiations which followed resulted in the execution of a supplementary or amendatory agreement dated October 20, 1933, but which was made effective as of July 1, 1933. This agreement provided that the rental reserved in the lease, in lieu of being paid at the rate of $5,500 on the first day of each month, should be payable as follows: "(a) $4000 shall be paid on the first day of July, 1933, for the month of July, and on the first day of each and every month thereafter to the end of the term", and shall be called the minimum rent; (b) a statement shall be submitted to the lessor on the first day of January and the first day of July of each and every year, showing the gross income of the lessee during the preceding six months, and the lessee shall pay $5\frac{1}{2}$ per cent of said gross income, less the $4,000 a month minimum rental paid during said six months period. The agreement further provided that the total payments for the six months period shall not exceed

$5,500 a month, except that if during any six months period the total rent paid did not equal $5,500 a month, any deficiency shall be carried forward to the succeeding six months, and any excess over $5,500 a month in a succeeding six months period shall be applied against the accumulated deficiency "until the accumulated deficiency has been entirely paid up so that a total of $5500 per month rental has been paid for each and every month beginning July 1, 1933", but that the lessee shall not be liable for any deficiency in excess of the minimum rental except out of the 5½ per cent of the gross income. The rents so paid by defendant, up to January 1, 1939, resulted in an accumulated deficiency of $15,-401.05, that is, the difference between the amount actually paid and $5,500 a month for that time. From January 1, 1939, and on the first of every month during that next six months period, that is, up to July 1, 1939, the $4,000 minimum rent was paid; but as stated, on April 26, 1939, defendant moved its business to another location, and at the end of the six months period it furnished plaintiff with a statement showing that during the time it occupied the plaintiff's premises after January 1, 1939, 5½ per cent of its gross sales amounted to $28,002.80; and a check was sent for $4,002.80, the balance over the minimum already paid.

Prior to the expiration of the lease no negotiations were had for a renewal thereof. Meanwhile plaintiff leased its property to other parties; and in April, 1938, defendant entered into a lease of premises across the street. The term of defendant's new lease began January 1, 1939, and provided for a fixed rental, but allowed defendant possession free of rental from January 1, 1939, to April 1, 1939, within which to prepare the premises for occupancy. Defendant made extensive improvements in its new location, the contracts therefor calling for completion on April 1, 1939, and April 10, 1939; and on December 26, 1938, defendant began a removal sale, which continued until the actual removal took place, on April 26, 1939. During the removal sale, as it could conveniently be done, fixtures and merchandise were moved to the new location; and on February 23, 1939, defendant received a letter from plaintiff notifying defendant that plaintiff required the surrender of the premises "promptly at the expiration time". The letter continued: "In order that you may be alive to the imperative necessity of surrendering to

the undersigned the said premises at said time and the consequences which will follow in the event of your omission to do so, you are advised that the undersigned has entered into a lease of said premises for a term commencing July 1st, 1939, calling for comprehensive work of alteration and remodeling of portions of said building, and that in entering into the engagements of said new lease of said premises the undersigned has relied and relies upon conformance by you to your legal obligation to surrender said premises at the time appointed in your said lease, and that should you fail so to do the monetary damage to the undersigned, which you in turn will be responsible for unto it, will be in a very substantial amount." Upon receipt of this letter, defendant speeded up the work on its new location, and when it was ready for occupancy defendant moved therein, closing operations at the old premises on April 25, 1939, and commencing business in the new on April 27, 1939. On the day preceding the opening in the new location and on April 26, 1939, a letter was received by defendant from plaintiff demanding that defendant continue business operations "upon the demised premises in the manner and for the time required by your lease and the amendatory agreement" in order to assure plaintiff the benefit of the percentage rental for the full semi-annual period expiring June 30, 1939. Manifestly it was impossible to comply with such demand.

Many other authorities besides the one above cited are to be found showing the limitations placed upon the authority of the courts to insert implied covenants in agreements, and also demonstrating the reluctance with which courts will exercise the authority to that end. In the case of *Freeport Sulphur Co.* v. *American Sulphur Royalty Co.,* 117 Tex. 439 [6 S. W. (2d) 1039, 60 A. L. R. 890], it was said: "The court cannot make contracts for parties, and can declare implied covenants to exist only when there is a satisfactory basis in the express contracts of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties in the contracts made. Before a covenant will be implied in the express terms of a contract, and in some cases in view of the customs and practices of the business to which the contract relates, it must appear therefrom that it was so clearly in the contemplation of the parties as that they deemed it unnecessary to express

it, and therefore omitted to do so, or that it is necessary to imply such covenant in order to give effect to and effectuate the purpose of the contract as a whole. The Supreme Court of West Virginia, in the case of *Grass* v. *Big Creek Development Co.*, 75 W. Va. 719, 84 S. E. 750, L. R. A. 1915E, 1050 [1057], states the rule as follows: 'Implied covenants can only be justified upon the ground of legal necessity. Such a necessity may arise out of the terms of the contract or out of the substance thereof. One absolutely necessary to the operation of the contract and the effectuation of its purpose is necessarily implied whether inferable from any particular words or not. It is not enough to say it is necessary to make the contract fair, or that it ought to have contained a stipulation which is not found in it, or that, without such covenant, it would be improvident or unwise or would operate unjustly; for men have the right to make such contracts. Accordingly courts hesitate to read into contracts anything by way of implication, and never do it except upon grounds of obvious necessity.' '' (See, also, 17 C. J. S. 778–781.)

Moreover, as set forth in 12 Am. Jur., page 749, ''A court is not at liberty to revise an agreement while professing to construe it. Nor does it have the right to make a contract for the parties—that is, a contract different from that actually entered into by them. Neither abstract justice nor the rule of liberal construction justifies the creation of a contract for the parties which they did not make themselves or the imposition upon one party to a contract of an obligation not assumed. Courts cannot make for the parties better agreements than they themselves have been satisfied to make or rewrite contracts because they operate harshly or inequitably as to one of the parties.'' And section 1858, Code of Civil Procedure, embodies this general rule: ''In the construction of a statute or instrument, the office of the judge is simply to ascertain and declare what is in terms or in substance contained therein, not to insert what has been omitted, or to omit what has been inserted; . . . '' The same doctrine prevails in this state, the rules upon which it is based being fully set forth and applied in *Foley* v. *Euless*, 214 Cal. 506 [6 Pac. (2d) 956], wherein the court refused to insert an implied covenant in an agreement relating to the delivery of raisins. In so holding the court said: ''Courts have been careful not to rewrite contracts for

parties by inserting an implied provision, unless, from the language employed, such implied provision is necessary to carry out the intention of the parties. No implied condition can be inserted as against the express terms of the contract or to supply a covenant upon which it was intentionally silent. The rule is thus stated by the court of appeals of New York in *Genet* v. *Delaware & Hudson Canal Co.,* 136 N. Y. 593 [19 L. R. A. 127, 32 N. E. 1078] : 'I know very well that implied promises are to be cautiously and not hastily raised. What they are was very well stated in *Scranton* v. *Booth,* 29 Barb. (N. Y.) 174, in *Allamon* v. *Albany,* 43 Barb. (N. Y.) 36, and in *Booth* v. *Cleveland Roll. Mills Co.,* 6 Hun (N. Y.) 597. They always exist where equity and justice require the party to do or to refrain from doing the thing in question; where the covenant on one side. involves some corresponding obligation on the other; where by the relations of the parties and the subject matter of the contract a duty is owing by one not expressly bound by the contract to the other party in reference to the subject of it. In this court we have thrown some safeguards about the doctrine to secure its prudent application, and have said that a promise can be implied only where we may rightfully assume that it would have been made if attention had been drawn to it (*Dermott* v. *State,* 99 N. Y. 101 [1 N. E. 242]), and that it is to be raised only to enforce a manifest equity, or to reach a result which the unequivocal acts of the parties indicate that they intended to effect (*King* v. *Leighton,* 100 N. Y. 386 [3 N. E. 594]).' " The court then, after quoting from *Loyalton etc. Co.* v. *California etc. Co.,* 22 Cal. App. 75 [133 Pac. 323, 324], went on to hold: "With these rules of law in mind we cannot conclude that there was an implied obligation on the part of respondents to cause the pool members to deliver all of their raisins to appellant. The omission of such a covenant might have been intentional on the part of respondents . . . The executed contract was clear in its terms . . . Had appellant desired a covenant requiring a given number of tons of raisins or all of the growers' raisins to be delivered to him, he should have had such a provision inserted in the contract. We cannot rewrite the agreement for him." (See, also, *Loyalton etc. Co.* v. *California etc. Co., supra; Cannon* v. *Selmser,* 85 Cal. App. 783 [260 Pac. 332].)

Summarized, therefore, the rule deducible from the foregoing authorities controlling the exercise of judicial authority to insert implied covenants may be stated as follows: (1) the implication must arise from the language used, or it must be indispensable to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract. Keeping in mind the above rules, we find nothing in the language employed in either the original lease or the modification, nor in any of the circumstances attending the execution thereof, to support the conclusion that there was an implied covenant requiring defendant to remain in business in the demised premises until the expiration of the term. An examination of the amendatory agreement shows that its terms are clear, definite, and unambiguous; that it was skillfully drawn, and executed only after full discussion and mature deliberation. It was the result of negotiations initiated by the letter written by defendant to plaintiff embodying a financial statement showing severe business losses for the years 1930, 1931, 1932, and up to the date of the letter in 1933, and stating in effect that unless a modification were made, on a percentage basis with a fixed minimum, defendant would be unable to continue its business under the lease.

Nor is there anything in the nature of the transaction to justify a finding that the implied covenant was indispensable to effectuate the intention of the parties, nor can it be supported on the grounds of legal necessity. On the contrary, as defendant argues, it would seem that the covenant to pay the minimum rental was inserted in the lease as a substitute for an express covenant requiring the continuous operation of the demised premises; that when the rental reserved in a lease is based upon a percentage of the gross receipts of the business, with a substantial, adequate minimum, there is no implied covenant that the lessee will operate its business in the demised premises throughout the term of the lease. In this regard defendant relies on the case of *Jenkins* v. *Rose's*

*5, 10 and 25¢ Stores*, 213 N. C. 606 [197 S. E. 174], which supports its contention. In that case the lease, which was for the year 1933 and was renewed for 1934, 1935 and 1936, provided for a percentage rental of 5 per cent of the gross sales, with a guaranteed minimum of $2,400 a year, payable $200 monthly, "said minimum rental of $2400 to cover the rental of 5% on the first $48,000 of sales", and if upon the expiration of the year the sales exceeded $48,000, the lessees were to pay 5 per cent on any sales in excess of $48,000. The lessee paid amounts over the minimum for the years 1933, 1934 and 1935; but during 1936 it did not operate any store or business in the demised premises. It paid the $2,400 minimum, and contended on appeal that this amount was in full settlement of all rent due the lessor for said year. The lessor contended, as here, that "under the lease the defendant was bound to conduct, with reasonable diligence, a store in the demised premises during the existence of the lease, and its failure to do so was a breach of the contract of lease whereby 'the plaintiffs were deprived from receiving the rents and profits that would arise and accrue from the reasonable occupancy of the premises by the defendant for the purpose for which it was leased. . . . ' '' And in reversing the lower court it was said: "An examination of the lease fails to show any stipulation or agreement requiring the defendant to operate a store in the demised premises. The lease shows that the plaintiffs very completely protected their interests in any contingency by requiring a fixed minimum rental of $200 per month. Whether the defendant operated a store in the building or whether it operated one successfully was no concern of the plaintiffs unless and until there were sales made on the premises in excess of $48,000 during the rental year. If the defendant operated at a loss it must continue to pay the $200 per month. The plaintiffs in their brief admit that 'there is no express covenant in the lease that the store will be operated,' but contend that such covenant is 'implied in the very terms of the contract and the nature of the lease.' Such does not seem to be the rule. The rule applicable to the duty of a tenant to occupy or use the premises is thus stated in the annotations of 46 A. L. R. at page 1134: 'Apart from the question of liability for waste, it seems that the tenant is under no obligation, in the absence of specific provision therefor, to occupy or use, or continue to use, the leased premises,

even though one of the parties, or both, expected and intended that they would be used for the particular purpose to which they seemed to be adapted or constructed.' Authorities are cited to sustain the rule as here stated. In the absence of any specific provision in the contract of lease that the defendant was to occupy the demised premises and was to operate a store therein during the life of the lease, we are constrained to hold that the $2400 paid and received was a full settlement of the rent due for the year 1936. . . . ''

Plaintiff concedes that in the Jenkins case it was held that ''there was no implied covenant to operate a store, despite the fact that the lease called for a percentage rental with a minimum''; but in a detailed analysis of the case attempts to show that the decision therein is unsound. We do not agree with plaintiff's argument in this regard; nor do we find, as plaintiff states, that with the exception of the Jenkins case the authorities are unanimous in holding that where there is a percentage lease with a minimum rental, there is an implied covenant for the lessee to continue the operation of its business for the term of the lease. The cases so cited by plaintiff in support of this statement are: *Genet* v. *Delaware & Hudson Canal Co.*, 136 N. Y. 593 [32 N. E. 1078, 19 L. R. A. 127] , *Goldberg, 168–05 Corporation* v. *Levy,* 170 Misc. 292 [9 N. Y. Supp. (2d) 304], and 11 N. Y. Supp. (2d) 315 , *Freeport Sulphur Co.* v. *American Sulphur Royalty Co., supra, Sinclair Refining Co.* v. *Davis,* 47 Ga. App. 601 [171 S. E. 150], and *Sinclair Refining Co.* v. *Giddens,* 54 Ga. App. 69 [187 S. E. 201].

An examination of those cases shows, however, that there were factual and legal elements present therein which differentiate them from the present case. Moreover, the Genet and Freeport Sulphur cases involved mining leases, as to which special considerations are applicable. The former case has already been referred to, *supra,* in the quotation from *Foley* v. *Euless, supra*; and apparently the decision therein was based fundamentally on two points: that the minimum royalty to be paid was not a ''substantial'' minimum rental, and that the lessee had wilfully and negligently incapacitated itself from continuing the operation of the mine. It cannot be so said of the present case. In the Freeport Sulphur case the issue was whether there was an implied covenant to operate one or five plants, and under the particular facts there

shown it was held that while the provisions of the contract carried the necessary implication for the continued operation of one plant, no implied covenant existed for the full and general development of the property which would require the operation of more than one plant; and that this was so because the provision relating to the erection and operation of one plant constituted an express provision for the development of the property, negativing the existence of any implied covenant for development. In the two Goldberg cases (the second is an appeal from the first), the lease provided that if the gross sales should not equal $101,000 a year, the tenant had the right to cancel the lease; and the lessee deliberately mismanaged the business and wilfully diverted it to another store owned by it, so that the gross sales amounted to less than $101,000 a year; and therefore the lessee cancelled the lease. The court held that such conduct was in direct violation of the covenant of good faith which exists in every contract. This again is a vastly different situation from the present case, where the lessee, after being notified that it will be liable for damages in a very substantial amount if it does not surrender the premises on the day the lease expires, moves out four days and two months ahead of that day. And in the two Sinclair cases, by the terms of the lease the lessee was to pay $10 per month and a certain sum on each gallon of gasoline sold, but he failed to operate a gasoline station; and the court held the lessor was entitled to cancel the lease. It is quite obvious, as defendant points out, that the minimum rent there was nominal, rather than in itself a substantial and adequate rental for the demised premises. It may be noted also that here no cancellation of the lease is involved.

Plaintiff also seeks to uphold the judgment on the ground that the facts of the case compel the conclusion that there is an implied covenant to remain in business in the demised premises until the end of the lease. But we find nothing in the arguments advanced in this behalf to warrant such conclusion. In this regard plaintiff points out that as shown by the terms of the amendatory agreement the percentage and minimum rental provided for therein was "in lieu" of the fixed rental called for by the original lease, and that the negotiations which resulted in the amendatory agreement were initiated by a letter written by defendant in which

it was stated, among other things, that such a modification of the lease would permit it to "operate with a fair degree of certainty of a moderate return" and put plaintiff in a position to profit by a general upturn in business and an increase in the volume of sales by defendant; also that the amendatory agreement provided that at the end of each six months during the term of the lease defendant should submit a statement showing its gross income during the preceding six months, and in connection with the above plaintiff says: "The test has been frequently stated to be whether or not the court can assume that the covenant would have been made if the attention of the parties had been drawn to it or if the unequivocal acts of the parties indicated that they intended to effect the result which would be accomplished by the inclusion of an express covenant in the agreement." It is apparent, however, that the present case does not meet the requirements of this test. As said in *Loyalton etc. Co.* v. *California etc. Co., supra*: " 'Where parties have entered into written engagements which industriously express the obligations which each is to assume, the courts should be reluctant to enlarge them by implication as to important matters. The presumption is that having expressed some they have expressed all of the conditions by which they intended to be bound.' (*Arthur* v. *Baron de Hirsch Fund,* 121 Fed. 791 [58 C. C. A. 67].) " (Citing numerous other cases.) And in the present case it is manifest that if it had been the intention of the parties to require defendant to operate its business in the demised premises for the balance of the term of the lease, such an intention, in a skillfully drawn agreement such as we have here, could and would have been expressed by a plain covenant to that effect. Therefore, the fact that under the circumstances stated there is an absence of such an express covenant clearly demonstrates that it was intentionally omitted; and that being so, under the legal principles above stated, it cannot be judicially inserted by implication.

The conclusion we have reached on the above determinative issue makes it unnecessary to consider or decide the other points raised by the respective appeals.

The judgment is reversed with directions to re-enter the same in favor of defendant.

Peters, P. J., and Ward, J., concurred.

A petition for a rehearing was denied July 3, 1941, and plaintiff's petition for a hearing by the Supreme Court was denied July 30, 1941.