[Civ. No. 1163. Third Appellate District.—November 25, 1913.]

LOYALTON ELECTRIC LIGHT COMPANY (a Corporation), Appellant, v. CALIFORNIA PINE BOX AND LUMBER COMPANY (a Corporation), Respondent.

CONTRACT TO FURNISH REFUSE OF FACTORY FOR FUEL—ACTION FOR BREACH—EVIDENCE.—In this action by an electric company against the owner of a box factory for damages because of an alleged breach of a contract to furnish the electric company for fuel purposes the excess of the refuse of the box factory not needed by it for steam generating purposes, the finding that the defendant did not refuse to permit the plaintiff to use such refuse is supported by the evidence.

ID.—CONSTRUCTION OF CONTRACT—OPERATION OF FACTORY.—Such contract does not obligate the owner of the box factory to operate it merely for the sake of producing refuse which the electric company may use for fuel.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. J. M. Seawell, Judge.

The facts are stated in the opinion of the court.

W. E. F. Deal, and Curler & Martinson, for Appellant.

Pillsbury, Madison & Sutro, for Respondent.

BURNETT, J.—The appeal is from the judgment and order denying a motion for a new trial. On April 20, 1904, appellant's assignor was engaged in operating an electric lighting plant and respondent was operating a box factory at Loyalton, in Sierra County. The power house for both plants was the same and was owned by respondent and con-

tained the dynamo and engine of appellant. On that date the parties entered into a written contract whereby it was agreed that respondent should keep employed a fireman for the purpose of keeping up steam in the boilers in the power house during the hours when the box factory should not and the lighting plant should be in operation and appellant was to be allowed the use of so much of the steam as might be necessary for the operation of its plant. Additional help, if needed, was to be employed by appellant. The right was accorded appellant to use the room in which was situated its dynamo and engine and to erect and maintain on and over the land owned or occupied by respondent such poles as might be necessary for the proper support and conduct of its wires used in connection with its lighting plant. Appellant agreed to furnish respondent with such electric lights as it might require in its factories, power house and other buildings, yards, and premises at Loyalton, not to exceed, however, in all two hundred lights for the price of ten cents per month for each of said lights. The main controversy, though, is over the following provision in said agreement: "The second party" (appellant) "shall have the right to use for fuel any refuse of the box-factory which the first party" (respondent) "may not require for generating steam for its own purpose, and any additional fuel which may be required for the purpose of generating steam for the use of the second party shall be supplied by the second party at its own expense."

An alleged violation of this provision by respondent is the basis for the action, plaintiff alleging: "That on or about the first day of September, A. D. 1904, the defendant, in violation of the said contract, refused to permit plaintiff to use the refuse of the box factory for the purpose of generating steam, and ever since said day, and up to the first day of July, A. D. 1908, has sold and disposed of all of the refuse of said box factory not required by it for generating steam for its own purposes. . . . That by reason of the said violation of said contract by defendant, plaintiff has been damaged in the sum of seven thousand, two hundred dollars."

This was positively denied by respondent and the court found against appellant. The vital point in the case involves the sufficiency of the evidence to support this finding.

And as to this, the contention is confined to the refusal to furnish block-wood, it being claimed as a part of the refuse.

Respondent points out in the record certain testimony which, it is contended, is amply sufficient to support the finding of the court and with this contention we agree.

C. E. Horton and R. W. Bender were the two witnesses called by appellant to prove the alleged refusal of respondent to comply with its agreement. The former testified that he was manager of respondent's plant from the fall of 1904 until December 30, 1906, and during that period he was there about three-fourths of the time. He was asked by appellant's counsel this question: "What, if any, objection was made at any time while you were there to the use of the blocks as well as of sawdust and shavings, by the defendant in this action or any of its officers?" and he answered: "There was no objection made by any one at all at any time." The witness repeated the declaration that there was no objection made by defendant or any of its officers during the entire period to the use by appellant of any of the refuse not needed by respondent.

The other witness, Mr. Bender, did testify that he had an altercation on several occasions with respondent's engineer about the use of the fuel, that the latter had refused to let him have it after a certain time at night, saying he had to keep up fire for the steam and that they would run short if they let the witness have the fuel. There is no evidence that the engineer made any misstatement as to the necessities of respondent in that regard. To the contrary, our attention is called to the following testimony of the witness: "Mr. Madison. Q. You heard Mr. Horton's testimony here this morning, did you, to the effect that the plaintiff in this case never was refused block-wood? A. Yes sir. Q. Do you mean to contradict him on that point? A. No sir, I do not; but when I made the statement that I had been refused the use of the blocks, it was the engineer's refusal to give them to me; and also when the engineer would refuse to give them to me, I called on the bookkeeper, and he said, yes, that they didn't have enough to run on and I couldn't use them. Q. And he was actually using them for generating the steam? A. Yes, sir; he was using the blocks and sawdust both. Q. And that is what he refused you? A. Yes sir. Q. And

that is all he refused you? Yes, and I had to go out and get my own wood, my own fuel.''

Mr. Horton also explained the controversy with the engineer by stating that he found out by investigation that the engineer wanted the blocks ''for work on the following day to make steam until he could make more blocks and fuel for the use of the box factory.'' Mr. Horton further testified that ''There was no objection by any one to using the blocks. It was a shaving bin and it was in the fire room in front of the boiler, and when the factory run right through the day, and the engineer said there wouldn't be enough shavings and saw dust to start the box factory the next morning, until he could get enough shavings to keep running during the day he at times would allow them to use the shavings out of the bin; but no one ever refused to allow the blocks to be used.''

He further testified, when recalled, that the only complaint ever made by appellant was that it couldn't get the blocks from the ''Roberts block-house after the lease running from Roberts Company to the California Pine Box Company had ceased and the Roberts people had taken the property back again and then they refused to let the electric light company have the blocks.''

It furthermore appears that respondent was not chargeable with any act or omission of the said Roberts Company and that appellant was in the habit of obtaining its blockwood from the Roberts block-house, as the arrangements for obtaining the same were more convenient than from respondent's block-house.

As to the sale by respondent of block-wood it was declared by Mr. Morton that this was done only as to the surplus after the requirements of appellant and respondent were met.

We deem it unnecessary to go further into this branch of the subject. After reading the entire record we are satisfied that the court's conclusion is a rational inference from the evidence and, therefore, supported within the contemplation of law.

Indeed, about the only serious controversy is as to the period when respondent's plant was not in operation. It seems that it was shut down early in 1907 and it so remained for two years. As to this we are in entire accord with re-

spondent's views as follows: "That the contract did not obligate the respondent to operate its box factory merely for the sake of producing refuse which appellant might use, if it wanted to, would seem to be clear. The contract, neither expressly nor impliedly, contains any language imposing such an obligation upon the respondent, nor indeed any language which shows that the parties even expected such operation to be continuous, although expressions showing their expectation to that effect, if there had been any, would not be the equivalent of a covenant."

The learned trial judge, it may be stated, so construed the contract in another action between the same parties covering a later period and the judgment was affirmed by the district court of appeal for the first district, the opinion being written by the late Mr. Justice Hall and reported in 22 Cal. App. 75, [133 Pac. 323]. Therein it was said: "The theory of appellant is that under the contract respondent was and is obliged to operate its box factory in order to produce refuse of the box factory, to the end that appellant may use for fuel any such refuse as respondent may not require for generating steam for its own purposes. This theory is entirely untenable." We think the reasons assigned by said court for its conclusion are sound.

Appellant urges that this construction makes the contract quite unequal and results in great detriment to its interests. From the record, however, we cannot estimate the relative value of the various covenants of the contract nor determine the diminution of the expense for the lights caused by the inaction of the box factory, nor, indeed, can we say that appellant was required to furnish respondent with any lights while its factory was not in operation. These considerations are, in fact, not before us. We are dealing simply with what was at issue in the case at bar.

We think the judgment and order should be affirmed and it is so ordered.

Chipman, P. J., and Hart, J., concurred.