[No. 33075. Department Two. March 17, 1955.]

STEPHEN KANDRA et al., *Appellants*, v. G. S. HIGGINS et al., *Respondents*.[1]

*B. J. McLean* and *Edward J. Crowley,* for appellants.

*Cunningham, Ries & Kenison,* for respondents.

[1] Reported in 281 P. (2d) 243.

ROSELLINI, J.—This appeal involves the interpretation of a farm lease, in Grant county, executed by the respondents as lessors and appellants as lessees. The farm in question was sold to the respondents by the appellants and a partner, Edward Welch. It was leased back to the appellants as part of the same transaction. The lease was drawn by respondents' attorney, and the appellants had nothing to do with its preparation other than to furnish the tabulation which appears below in the quoted provision of the lease.

After the crops were harvested by the lessees, a dispute arose as to the rental due under the terms of the lease, resulting in a suit by the lessees to recover a refund alleged to be due on the advance rental paid under the terms of the lease. The lessors denied that any refund was owing and cross-complained for additional rent alleged to be due and asked for an accounting. The suit was tried to the court, which found in favor of the respondent lessors.

The pertinent part of the lease reads as follows:

"  . . .  for the crop year beginning April 26, 1951, and expiring December 31, 1951, for a rental of $32,500.00 or for one-quarter of the crops raised upon said lands by the lessees whichever is the greater.

"It is estimated that the crops to be grown upon the acreage herein set forth and leased by lessors will if properly farmed by lessees produce amounts herein set forth as follows:

| "Crops | Acres | Guarantee Per Acre | Total Guarantee Per Acres | Estimated Total Production |
|---|---|---|---|---|
| WHEAT | 215.70 | 50.00 | $10,785.00 | $10,750.00 |
| BEETS | 70.90 | 50.00 | 3,545.00 | 7,090.00 |
| MINT | 117.90 | 50.00 | 5,895.00 | 9,440.00 |
| POTATOES | 67.50 | 50.00 | 3,375.00 | 6,750.00 |
| ONIONS | 65.00 | 50.00 | 3,250.00 | 13,000.00 |
| PASTURE | 44.00 | 50.00 | 2,200.00 | 2,200.00 |
| GRAPES | 16.00 | 50.00 | 800.00 | 800.00 |
| ALFALFA | 22.00 | 50.00 | 1,100.00 | 1,100.00 |
| BUILDINGS | 1.75 | 50.00 | 87.50 | 200.00 |
| FEED LOT | 11.00 | 50.00 | 550.00 | 550.00 |
| CORN | 18.25 | 50.00 | 912.50 | 900.00 |
| | | | $32,500.00 | $52,780.00 |

"It is agreed that the lessees have paid to the lessors the sum of $38,000.00 as rental for the above described acreage,

which said amount has heretofore been receipted for, and which amount shall be credited upon the rentals due provided that the value of the one-quarter of the crop exceed $38,000.00, and if one-quarter of the crop does not exceed the sum of $32,500.00 and the parties hereto accept a cash rental proposition, then the lessors shall return to the lessees whatever amount they have paid in excess of the cash rental of $32,500.00."

It was stipulated by both parties at the trial that a rental of $50 per acre would be paid for nonproductive land, being 56.75 acres, which included pasture, feed lot, and buildings. This construction of the lease is indicated by the column headed "estimated total production," which includes "production" for these admittedly nonproductive areas, although it is not so expressed elsewhere in the lease.

The question which we must decide, then, is whether the lease provides for a rental of $32,500 or the proceeds of one quarter of the total crop raised, whichever is greater, plus the stipulated trial agreement of $50 per acre rental for nonproductive land, or, as respondents contend and the trial court found,

" . . . a minimum rental of $50.00 per acre for each crop grown thereon including acreage occupied by buildings, feed lot and pasture or 25% of each particular crop in the event 25% of that particular crop exceeded $50.00 per acre."

The trial court, in construing the lease, further found

" . . . that each party to the lease is equal in the interpretation of the lease except that the figures in the lease should be construed more favorably to the lessors as the information of the production of the land was gained from the plaintiff, Stephen Kandra, and his partner, Edward Welch."

The rental provision is plain and unambiguous. It provides for payment of a lump sum of cash rental only in the event one quarter of the proceeds of the crops does not exceed $32,500. If there is any ambiguity at all, it arises through the choice of language used in the columnar headings in the tabulation. The trial court attached special significance to the heading "guarantee per acre" and in-

terpreted it to mean "guaranteed production per acre." However, the testimony of the parties established and the court found it to be a fact that the column "estimated total production" represented estimated rental if the land was properly farmed.

In comparing the estimated total production of wheat and corn with the "total guarantee per acre," we find the estimated rental is less than the supposed guarantee. Thus, any inference raised by the columns headed "guarantee" is refuted by the column relating to the estimated rental. We are left with the unambiguous provision in the preceding paragraph to the effect that the rental should be "$32,500.00 or . . . one-quarter of the crops raised . . . whichever is the greater."

■ If the lease were ambiguous, we should nevertheless be inclined to hold that the lessee should have the benefit of the rule that the construction less favorable to the party preparing the contract must be adopted. *State Bank of Wilbur v. Phillips,* 11 Wn. (2d) 483, 119 P. (2d) 664. The record is not clear as to whether the lease was demanded by the seller or the purchaser in the "package transaction," but the fact that it was required by either party would have no effect on the application of the rule of construction. The latter is founded upon the supposition that one preparing an instrument will choose the language most favorable to his position. Had the lessors in this instance required a guarantee that each crop planted should produce a minimum of $200 per acre, they could have chosen the language to clearly express such a covenant.

The trial court further found that, as a part of the sales transaction, the owners, Kandra and Welch, transferred to the purchasers, respondents, whatever right they might have to farm an eighteen-acre tract adjacent to the farm, which belonged to the state highway department and was not described in the lease. Upon harvesting the crops, Kandra held out the potatoes grown on these eighteen acres as his own and did not account for them to Higgins or to his partner Welch.

The most significant testimony in regard to these matters is as follows:

(Kandra on cross-examination)—"The court: Why didn't you continue to farm it in 1952? The witness: Because my lease expired in 1951, and I was through. I quit. I wasn't going to farm 18 acres in a little corner. But while I was farming the main tract, I farmed that too. Q. You would have the right to go back and farm that now? A. No, I wouldn't."

Kandra testified the first day of the trial on cross-examination as follows:

"Q. In other words, so the record is clear, at the time the lease was made, figuring it the rent would be on the land that you were selling plus the 10 acres of state land that you were farming? Is that right? A. Well, that ground the state highway right-of-way was farmed, yes. Q. And then the 640 acres plus the right-of-way ground, would that make approximately 650? A. Well, yes; I guess."

Welch testified in regard to this acreage as follows:

"Q. And then right south of Primary State Highway 18 there is a small acreage owned by the state, is that right? A. That's right. Q. You have always included that in your farming operations? A. Correct. . . . Q. What was said regarding this acreage between Mr. Kandra and Mr. Higgins and yourself? A. Pertaining to the sale of the ranch? Q. Yes. A. They were supposed to get everything that we had jurisdiction of except 7½ acres off of Section 28."

Welch testified as follows in regard to the right-of-way ground:

"The court: You received permission then to continue farming that highway land? The witness: That's right. The court: That is land that belongs to the State Highway Department? The witness: That's right. The court: Until this right-of-way goes through? The witness: That's right. The court: And is it still being farmed? The witness: It is still being farmed. The court: Now this is the question I want to ask: You sold your half interest in this ranch to Higgins? The witness: Yes. The court: And when you sold your half interest in this ranch to Higgins, did your interest in the right to the farming of the 18 acres go with it? The witness: It did; everything. The court: As far as you were concerned? The witness: As far as I was concerned, all my interest went to Higgins. The court: Now, Kandra farmed

this 18 acres after the sale? The witness: That's right. The court: Did he divide with you any of the profits from the income off of that ranch? The witness: No. Not a penny other than what we had before. You say on our operation? The court: I am talking about this potato crop. The witness: You mean under this lease? Not a cent. The court: I am speaking of the 1951 crop. Did you get anything— The witness: No. The court:—off of that 18 acres, off this 1951 crop? The witness: No. Not a penny. I had no interest in it whatsoever. The court: It was your understanding that as far as your interest was concerned that had gone to Higgins, is that right? The witness: That's right. That is absolutely correct. The court: That's all."

■ Although the tract is not described in the lease or referred to except indirectly in the tabulation of the acreage, we think the evidence supports the court's finding that the parties intended and that it was part of the consideration of the "package transaction" that the lessees farm this tract for the lessors and render to them the rental provided for in the lease.

As we have construed the lease, the rental due should be one fourth of all the crop proceeds, including eighteen acres of potatoes grown on state land, plus the 56.75 acres of nonproductive land at $50 per acre, as stipulated by the parties, which total would be less than $38,000 deposited with the lessor. The plaintiff is entitled to the refund of the difference between the total of the rental due and the deposit, with interest at six per cent per annum, together with his costs.

Therefore, the judgment of the lower court is reversed in part and affirmed in part, and the case is remanded with directions to enter a judgment in conformity with the findings as herein set forth. Appellants will recover costs on appeal.

HAMLEY, C. J., MALLERY, HILL, and WEAVER, JJ., concur.

May 31, 1955. Petition for rehearing denied.