[No. 33181. Department One. August 18, 1955.]

EDGAR KERNS et al., Appellants, v. ELMINA PICKETT et al., Respondents.[1]

[1] Reported in 287 P. (2d) 88.

*Savage & DeVange,* for appellants.

*Elliott & Schneider,* for respondents.

DONWORTH, J.—This is an action for the specific performance of alleged five-year lease of certain farm lands situated in Whitman county which, until the death of Albert E. Pickett, had been the community property of him and his wife, Elmina Pickett.

On March 16, 1954, plaintiffs commenced this action, praying, among other things, (a) that the defendants (life tenant, her two sons-in-law, and the six children of Albert and Elmina Pickett, two of whom had recently been appointed coexecutors of the estate), be enjoined from interfering with plaintiffs' quiet and peaceable enjoyment and possession of the premises; (b) "That said defendants and each of them be required to specifically perform said agreement, and that the Court find that said lease is a valid, enforceable and subsisting lease up to and including the 1st day of October, 1958"; (c) that the plaintiffs have such other and further relief as the court may deem just and equitable.

Upon the filing of the complaint, an *ex parte* show cause and restraining order was issued for the purpose of maintaining the *status quo* with respect to plaintiffs' possession of the premises pending the litigation. By stipulation of counsel, the case was tried on its merits on the return date named in the show cause order.

Defendants' answer denied the principal allegations of the complaint relating to the lease and contained a cross-complaint, in which it was alleged that plaintiff, Edgar Kerns, "induced" Mrs. Pickett to sign the lease with the mutual agreement and understanding that it was not to be effective for any purpose unless and until all the remaindermen had signed it. It was further alleged that there was no delivery of the lease and no execution by Mrs. Pickett, except

that induced by plaintiff, Edgar Kerns, on the understanding set forth above; and that the lease was never executed by any of the remaindermen. It was alleged that portions of the land in question were leased to two sons-in-law of Mrs. Pickett (named as defendants in the complaint) by leases signed by her and by all the remaindermen, and that plaintiffs were wrongfully in possession of the premises in that they were running stock thereon and storing their farm machinery in the buildings, and were thereby preventing the sons-in-law from cultivating the land under their respective leases.

No reference was made in the cross-complaint to the probate of the will of Albert E. Pickett or the appointment of two of the sons as coexecutors. Nevertheless, after the trial was concluded, defendants attempted to raise the question of the validity of the lease on the ground that a devisee could not enter into such a contract without the approval of the executors. The trial court declined to decide this question because it was not mentioned in the pleadings or raised during the trial.

The prayer of the cross-complaint asked that:

" . . . the Court enter a decree that the plaintiffs take nothing by their action and that it be dismissed at plaintiffs' cost, and that the Court further decree that neither of the plaintiffs nor any of them nor anyone claiming by, through or under them has any right, title, lien or interest in or to said lands and that the plaintiffs be permanently enjoined from claiming any right, title, lien or interest in or to said lands and from interfering with the quiet and peaceable enjoyment or possession of the premises described in this cross-complaint or any part thereof; and that the Court further decree that the form of lease prepared to be executed as described in Paragraph VI of this cross-complaint be decreed to be void and of no force or effect whatsoever; and that the Court further enter a decree ordering and directing the Sheriff of Whitman County to eject the plaintiffs and each of them and all persons claiming by, through or under them and all of their possessions from all or any part of the real property described in this answer and cross-complaint; and that the defendants have such further and other and different relief as to the Court may seem just."

The reply put in issue the material allegations of the cross-complaint.

At the trial, after both parties had rested, the trial judge took the case under advisement and later filed a memorandum decision, holding that the parol evidence rule applied and that plaintiffs were attempting to vary the terms of the alleged lease by showing that they and Mrs. Pickett had executed it as a five-year lease, valid as between them for the period of her life (if she should die within five years), regardless of whether the remaindermen ever signed it or not. He concluded that plaintiffs had no lease and were not entitled to possession of the premises.

Subsequently, plaintiffs' motion for new trial was denied, and the trial court entered findings, conclusions, and a decree in accordance with the memorandum decision. Plaintiffs have appealed from this decree and assign eight errors which they contend were committed by the trial court.

Before discussing these assignments, we find it necessary to set forth rather fully the facts of this case in order to clearly present what we conceive to be the crucial issue involved.

Albert E. Pickett died testate July 29, 1953, being survived by his wife and six adult children. He left a will, which was not offered or admitted to probate until March 5, 1954, which was some four months after the execution of the instrument involved in this case. By his will, he devised to his widow, Elmina, a life estate in his share of the community real property, which consisted principally of agricultural land situated in Whitman county, with remainder to each of his six children, individually, with respect to separate parcels of land. During the 1953 season, and for some years prior thereto, Vern, the youngest child, had been farming three hundred fifty acres of the land owned by the parents under an oral lease. As to two hundred forty acres of this land, Vern was the sole remainderman under the will.

In the fall of 1953, Vern was advised to quit farming because of his failing health. He went to the veterans' hospital in Spokane, where he sent word to plaintiff, Edgar Kerns, that he wanted to see him. Kerns had for many years farmed

land which was adjacent to the Pickett farm. Late in October, 1953, when Kerns visited Vern at the hospital, Vern requested that he do some fall plowing and other field work on that portion of the Pickett farm which Vern was leasing. As neighbors, the parties had several times helped one another out with their field work.

In the course of this meeting, the necessity of Vern's retiring from active farming operations was discussed. Vern owned certain farm equipment and machinery which he valued at eighteen thousand dollars. There is no dispute in the evidence that at this meeting the parties agreed that (a) Vern would attempt to persuade his mother to lease this portion of the Pickett farm to Kerns for a five-year period, (b) that Kerns would purchase Vern's farm equipment and machinery for eighteen thousand dollars, (c) that Kerns would immediately send his hired man and a rig to the Pickett farm and do the necessary field work, and (d) that if Vern's mother executed a lease to Kerns, there would be no charge for the field work; otherwise, Vern would pay for the actual cost of doing the field work.

On the evening of October 31, 1953, Edgar Kerns and his son, Kenneth (plaintiffs herein), met at the Vern Pickett farmhouse with Mrs. Elmina Pickett, her son Vern, and his wife. At this meeting, Elmina Pickett orally agreed to lease the farm land to Edgar Kerns for five years. Kerns gave Vern Pickett his personal check in the amount of eighteen thousand dollars for the purchase of Vern's farm equipment and machinery. The parties agreed to meet in Colfax on the following Monday (November 2, 1953) to execute a bill of sale for the personal property and a lease of the farm land.

On that day, Elmina Pickett and Edgar Kerns went to Colfax together, but Vern had returned to the hospital in Spokane and could not go with them. Mrs. Pickett went first to the production and marketing administration office, where she notified the persons in charge that Mr. Kerns was the operator of a portion of the Pickett farm and arranged to have the wheat acreage allotment transferred to him. Notification of the transfer was, in due time, mailed to him by that agency. The parties then proceeded to the office

of an attorney, who had not previously represented either of them. The bill of sale transferring title to the farm equipment and machinery was prepared and mailed to Vern at the hospital for his signature.

In connection with the proposed lease, the attorney was advised that the will of Albert E. Pickett had not yet been admitted to probate and that Elmina Pickett claimed, under that will, to have a life estate in her deceased husband's one-half of the community realty. After the parties were advised by the attorney of the hazards inherent in a lease of farm land from a life tenant, the lease of this land for a term of five years was drawn as though there was to be one lessee (Mr. Kerns) and one lessor (Mrs. Pickett). At this time, Mrs. Pickett was seventy-four years of age.

Before the instrument was submitted to these parties for inspection and execution, Vern Pickett, in the absence of his mother and Kerns, went to the attorney's office. The record does not inform us as to what transpired between Vern Pickett and the attorney at this meeting on the afternoon of November 2nd, because defendants' objection to admission of such testimony was sustained. However, after this meeting the attorney redrafted the first and last pages of the lease, and on the following day (November 3rd) Mr. Kerns and Mrs. Pickett executed the lease in the attorney's office. His testimony as to why the lease was redrafted is as follows:

"A. There were two reasons for redrafting the lease. The first was to add the name of Kenneth Kerns as one of the lessees along with his father Edgar Kerns, and the second was to add the name of the remaindermen who held interest after the death of Mrs. Pickett. That was the form in which it was redrafted. Only the first and last page were changed. Q. Now directing your attention to November 3rd, 1953, did the same parties return to your office on that day? A. Mrs. Elmina Pickett and Mr. Edgar Kerns returned on the afternoon of November 3rd but not Vern Pickett. Q. Handing you plaintiff's exhibit C, what happened on the afternoon of November 3rd? A. When Mrs. Elmina Pickett and Mr. Edgar Kerns came to the office I discussed the matter of the lease again with Mrs. Pickett, pointing out again the fact that her lease would be binding so long as she lived, so long as her life estate was concerned, but should anything

happen during the period of the lease to her the lease would terminate, and in order to make it binding beyond that period it would be necessary for the remaindermen to become parties to the lease and it was the desire of Mr. Kerns that they be added for that reason. . . . Q. You say you went into the lease itself with Mr. Kerns and Mrs. Pickett. A. Yes. I again explained this to Mrs. Pickett — . . . A. (Continuing) After explaining it to Mrs. Pickett in detail she still expressed herself that it was totally unnecessary to have the children sign the lease; that the property was hers as long as she lived and under the will she had that right, and both at that time and the prior time the fact was brought out by Mrs. Pickett and her son Vern he was a remainderman of most of the property included in the lease therefore it was agreeable with him. Mrs. Pickett stated it didn't make any difference, that she had a right to sign the lease and the children weren't necessary, and she would have the children consent if Mr. Kerns wanted it; so far as she was concerned it was a binding lease. Q. Was anything said by Mrs. Pickett as to whether or not the children would sign? A. Yes. I suggested I mail it out to have the others sign it and she said 'no, I will have them sign it and bring it in. They will sign it.' Q. And Mr. Edgar Kerns and Mrs. Pickett signed it at that time? A. Yes. Q. And you acknowledged their signature as Notary Public? A. Yes. Q. When did Kenneth Kerns sign it? A. He came in an hour or half an hour later after they had gone. He read the lease over and signed it and I acknowledged his signature."

(Respondents' motion to strike this testimony on the ground that it was an attempt to vary the terms of the lease by parol evidence was denied.)

Mrs. Pickett thereafter attempted to obtain the signatures of the six remaindermen to the lease as lessors, but none of them ever executed it, apparently because the two sons-in-law wanted to lease the property.

On October 28th, appellants began doing the field work under their agreement with Vern. Between the date of execution of the lease (November 3rd) and November 10th, they finished the field work. Between then and November 21st, the lessees moved their equipment and livestock onto the leased premises. On the latter date, Mrs. Pickett wrote them a letter, stating:

"Due to circumstances, I have decided not to lease the place to you. Please do not move in."

As to Vern's reason for not signing the lease, his testimony was as follows:

"Q. When you left there that day, the 2d, I take it it was with the understanding the lease had to be signed by all of you to be binding? A. That was the idea I had. Q. From what Mr. Savage had said? A. Yes. Q. What was said, if anything about the others signing it? A. Well, at that time I didn't think there would be any trouble about the rest of the children—about getting the rest of the children to sign the lease. Q. And it turned out there was. A. Yes, evidently there was a little trouble about it. Q. What was this occasion when you went back with Mr. Kerns? A. Well, frankly, I sort of felt like a skunk because I had tried to get him the lease. To get right down to it I had. Q. And failed. A. Yes. Actually I didn't have anything to say about the lease on the land, and we went down to talk to Mr. Savage and see what could be done. Q. What was said then? A. Mr. Savage had the lease drawn up with spaces for the rest of the children to sign, and so I didn't feel right at the present time I should sign the lease because I got to live with my family. You know blood is thicker than water and I didn't think I should sign it until we got it straightened out."

On or about November 16th, Mrs. Pickett's two sons-in-law, who desired to lease the land in question, called on Edgar Kerns and his son and offered them a check for eighteen thousand dollars if they would sell them the farm equipment and machinery which they had bought from Vern (and presumably also relinquish their claim to the leasehold and vacate the premises), but these attempts to settle the matters in controversy were never consummated.

On December 29, 1953, Mrs. Pickett and the six remaindermen, joining as lessors, demised all of the land previously farmed by Vern by executing and delivering to each of the two sons-in-law a five-year lease covering separate portions thereof.

On March 4, 1954, the will of Albert E. Pickett was admitted to probate. The widow was nominated in the will as sole executrix but declined to accept appointment, and two sons, Ross and Clare, were appointed and later qualified as

coexecutors. Meanwhile, on March 11th, the two sons-in-law ordered plaintiffs to remove their possessions from the Pickett farm, and on March 16th this action was commenced.

As we understand appellants' case, basically they contend, in the alternative, that the lease is binding upon *all* of the named lessors because of a valuable consideration having passed between the parties and because of the alleged part performance of the lease contract by the appellants. If this argument fails, then, in the alternative, they argue that the lease, as executed, is binding upon Elmina Pickett for the period of her life, but not exceeding the five-year term.

Appellants assign error to but one finding of fact, which reads:

"VI. That the lease . . . is clear and unambiguous and covers the entire subject matter and is complete upon its face."

Three assignments of error (Nos. 2, 3, and 4) predicate error on the court's adoption of the following conclusions of law:

"I. That the lease . . . was never fully executed.

"II. That the Plaintiffs are barred from showing by parol evidence any claimed agreements not within the lease itself.

"III. The Defendants are not estopped to deny the validity of the lease by reason of any claimed part performance."

Prior to the execution of the lease, Edgar Kerns paid Vern Pickett eighteen thousand dollars for his farm equipment and machinery. Appellants now contend that they did not need this machinery, that the price they paid exceeded the actual cash value of the machinery, and that the sale was consummated, on their part, solely as consideration for the desired lease. If appellants were claiming, under the lease, only the right to possession of the two hundred forty acres, as to which Vern was the sole remainderman, this argument might have some bearing on our problem. However, appellants are claiming a lease covering all three hundred fifty acres which Vern had been farming. This included not only the two hundred forty acres as to which he was the sole remainderman named in the will, but also one hundred ten acres as to which his two brothers were named

as remaindermen. Neither of these two brothers had any interest in the sale of Vern's farm equipment and machinery. There is no evidence that either of them ever heard of the transaction.

It should be noted that the lease was drafted so as to include the entire Pickett farm. One of the issues framed by the pleadings was whether there was a mutual mistake in the description of the land in the lease as to whether it was to include all of the property owned by Albert and Elmina Pickett, or whether it was to include only the portion of the farm then being leased by Vern Pickett. During the trial, it was stipulated by counsel that the lease was intended to cover only that portion of the farm (350 acres) being farmed by Vern Pickett. The effect of this stipulation seems to have escaped the attention of the parties, because a reference to the will shows that the three daughters had no remaindermen's interest in this three hundred fifty acre tract, and that only the three sons, Vern, Ross and Clare, hold a remainderman's interest therein. Respondents' contention that the lease will not be effective until signed by all six of the children could not be sustained on any theory because one half of them (the daughters) were not named as remaindermen in the will with respect to the leased property.

The bill of sale for this equipment and machinery is silent on the matter of a lease of farm land. Likewise, the lease makes no mention of the farm machinery, or its sale. The parties to the sale contract were Edgar Kerns and Vern Pickett. The parties who executed the lease were Edgar Kerns and his son and Elmina Pickett. The sale of Vern's equipment and machinery was not a valuable consideration for the lease as far as the two other remaindermen were concerned.

Appellants further assert that the field work which they performed on the land in question is, in the eyes of the law, such a part performance of the lease as to make it binding upon all the remaindermen. The field work performed by appellants was started about October 28th, pursuant to their original agreement with Vern, and not as

lessees. It was completed about November 10, 1953. Before the lease was signed by Mrs. Pickett on November 3, 1953, appellants had plowed about thirty acres and had disced one hundred sixty acres. They continued the work and completed it a week after the lease was signed. They were doing this work pursuant to their oral agreement with Vern, and were on the farm by his permission and not otherwise.

We, therefore, hold that the field work which is alleged to constitute part performance of the lease contract was not done in reliance upon the lease.

■ We are of the opinion that the trial court was correct when it made the finding to the effect that the lease was not ambiguous, was complete on its face, and covered the entire subject matter. But appellants have not attempted to change any provisions of the lease by parol evidence. Their contention is that, from and after November 3, 1953, the lease was binding upon appellants and upon Mrs. Pickett to the extent of her legal interest in the property, and that in reliance thereon they pastured their cattle on the farm and stored their equipment in the buildings thereon. As we see it, the parol evidence rule is not applicable. *Kelly v. Valley Construction Co.*, 43 Wn. (2d) 679, 262 P. (2d) 970, and cases cited.

The crucial issue in this case is whether the lease was executed and delivered. Respondents alleged that it was not; appellants denied this allegation in their reply. The testimony relative to this issue was in conflict. The trial court made no finding on this important issue of fact nor is any reference made thereto in its memorandum decision, although there is a statement that the court believed appellants' testimony in general.

■ As an appellate court, we do not pass upon such issues of fact before the trial court has evaluated them. Since, for this reason, we are unable to make a final disposition of this case on the present record, we have no alternative to remanding it for the making of a finding whether there was an execution and delivery of the lease between the three parties who signed it so that it became legally binding

upon them, or whether such execution and delivery was made conditional for its effectiveness upon the further execution thereof by the three remaindermen having an interest in the property now sought to be made subject to the lease.

Appellants proposed a finding and a conclusion of law (which the trial court rejected) which called attention to this issue. By their assignment of error No. VIII, they have raised the question in this court as to the necessity of making a finding on this issue. Of course, we do not intend to intimate any opinion as to the propriety of making the particular finding and conclusion proposed by appellants. That is the function of the trial court.

Since the case must be remanded, one more matter should be mentioned. At the close of the trial, the court did not hear oral argument, but called for written briefs. The brief submitted by respondents raised, for the first time, the question of the validity of the lease to appellants, because the executors of the estate of Albert E. Pickett, as such, had not signed or consented to the execution of the lease. The record does not contain any motion to reopen the case for the purpose of taking evidence regarding this matter. The trial court in its memorandum decision indicated that the matter was not timely raised and that he was not considering it in his decision. Since the question of the authority of the devisees to enter into the lease prior to the probate of the will and the appointment of the executors was not decided by the trial court, we do not deem it necessary to express any opinion with respect thereto. However, nothing said herein shall be construed as prohibiting the trial court, upon its further consideration of this case, from deciding such question.

It should be noted that, at the trial, respondents were represented by other counsel than those appearing for them in this court.

The cause is remanded to the trial court for the purpose of making a finding on the issue whether or not there was an execution and delivery of the lease by the three parties who signed it with the intent that it should become effective

unconditionally on November 3, 1953. If the court shall so find, it shall enter a new judgment awarding appellants specific performance of the lease for the period from November 1, 1953, to October 1, 1958, or until the death of Mrs. Pickett (if that event should occur prior to the expiration of the term of the lease). If the court shall find to the contrary, its original judgment is hereby affirmed.

Any party to this action may appeal to this court from any judgment hereafter entered by the trial court. Costs on this appeal shall abide the result of the final action of the trial court.

HAMLEY, C. J., SCHWELLENBACH, WEAVER, and OTT, JJ., concur.

November 7, 1955. Petition for rehearing denied.

