[No. 1544-2.   Division Two.   August 7, 1975.]

FULLER MARKET BASKET, INC., *Appellant*, v. GILLINGHAM & JONES, INC., *Respondent*.

*Grant Armstrong* and *Murray, Armstrong & Vander Stoep*, for appellant.

*H. John Hall* and *Campbell & Hall*, for respondent.

PEARSON, J.—Plaintiff, Fuller Market Basket, Inc., appeals a dismissal of its complaint for damages against its lessor, Gillingham and Jones, Inc. The issues on this appeal are whether or not the lease between plaintiff and defendant contained an express or implied covenant requiring the defendant to maintain and operate a shopping center in connection with the premises leased to plaintiff, and whether or not defendant's failure to operate the shopping center constituted a constructive eviction.

The facts are largely undisputed. In 1958 plaintiff, a grocery supermarket operator, became defendant's tenant in a shopping center at the north city limits of Chehalis, known as "Yard Birds." In December 1963, and prior to the expiration of a 5-year lease, a new lease was negotiated which required defendant to construct a new building to house plaintiff's grocery business. The new lease provided: "Said building shall be a part of what is known as the Yard Birds Shopping Center."

An exhibit, which was made a part of the lease, showed a diagram of the building in relation to the shopping center. The language relied upon by defendants as creating an implied covenant is contained in paragraph 6 of the lease. The first part of that paragraph referred to the future development of a discount drug department which might be installed in a position of the premises leased to plaintiff or in an adjoining building which lessor agreed to build as follows:

> It is further agreed that Lessor will construct such additional building between the building herein leased and the main shopping center during the year 1963 or

1964 and when completed it, together with the property herein leased and the main shopping center, will constitute one continuous set of buildings with a common mall area allowing the free flow of traffic between the shopping center and the building herein to be leased.

Defendant complied with this provision and the discount drug store commenced operating in the adjacent building.

The term of the lease was 180 months, with two 5-year renewal options. The agreed minimum rental was $750 per month or 1 percent of the gross rental, whichever was higher, but not to exceed $1,250 per month. The lease, which was prepared by plaintiff's counsel, with defendant not represented, contained an integration clause which provided:

It is mutually agreed that there are no other representations, warranties, guaranties, or agreements made to either party by the other and binding upon the parties which are not specifically set forth herein . . .

Defendant's evidence, which was accepted by the trial court, showed that defendant commenced construction of a new shopping center in 1970 about ¼ mile from the leased premises, in order to accommodate growth and expansion indicated by its business judgment, and without intentions to abandon the existing shopping center. The new center was completed in September 1971, and by December of that year a part of defendant's retail operation was moved to the new site. Defendant's original store continued operation with a variety of departments, including clothing, furniture, hardware, sporting goods, and a restaurant. Many other tenants of the original center had moved to the new shopping center by the end of 1971.

In January of 1971, defendant suffered serious flooding in its original store, which caused substantial damage to its merchandise and necessitated substantial cleanup costs. This flood affected plaintiff to a lesser degree, because its building had been constructed 2 feet higher than the rest of the shopping center. Following this flood, defendant and plaintiff both reopened their stores and operated regularly

until September of 1971, at which time defendant moved a substantial part of its merchandise to the new store. However, some $300,000 worth of merchandise was still on the floor in defendant's original store by the end of 1971.

Another serious flood occurred at the original site in January of 1972, with water levels exceeding 36 inches above the floor level. Following the cleanup, defendant closed its operations completely at the old site. At this time, plaintiff was the sole occupant of the original shopping center. In February 1972, defendant publicly announced the closing of the old shopping center.

Plaintiff continued its business well into the fall of 1971, and paid rent until it finally closed its operation. However, plaintiff retained occupancy of the premises after ceasing business for several more months until March 1972, without paying rent.

There is no question that plaintiff's business declined steadily from September of 1971 until it elected to go out of business in 1972. Plaintiff's complaint alleged that defendant's actions in closing the old shopping center and moving its location constituted a constructive eviction, entitling it to compensatory and consequential damages.

Defendant's answer denied that a constructive eviction had occurred and affirmatively alleged that the flood of 1972 caused closure of the shopping center. As a consequence, an "inevitable accident" provision contained in the lease was pleaded as a defense.[1] Defendant also interposed a cross claim seeking an offset for unpaid rent in the event damages were awarded to plaintiff.

The findings and conclusions entered by the trial court and challenged on appeal held against plaintiff's contention that defendant had breached a covenant, express or implied, or that defendant's actions constituted a constructive eviction. The court also found against defendant on its cross

---

[1]The lease provided that if the premises were destroyed by fire, earthquake or inevitable accident not the fault of either party to the extent that it could not be made tenable within 90 days, both parties would be released from further obligations or liability under the lease.

claim for unpaid rental and no cross-appeal from this ruling has been asserted.

During the trial, the court sustained an objection to an offer of proof through plaintiff's president that during negotiations for the lease defendant's agent had made representations as to the increase in volume of defendant's business which would result from the new building's being made a part of the Yard Birds Shopping Center, and that this representation induced plaintiff to proceed with the new lease at a substantial increase in rental. This ruling is also urged as error on appeal. The challenged findings and conclusions advance three reasons for the dismissal of the complaint:

1. The lease did not contain an express covenant requiring defendant to maintain its retail outlet at the original shopping center site, nor did it expressly obligate defendant to commit other tenants to continue operations there.

2. Since plaintiff had prepared the lease, the court should construe it against plaintiff and should not imply a restrictive covenant requiring defendant to maintain a shopping center in connection with the leased premises for the entire term of the lease. *Kandra v. Higgins*, 46 Wn.2d 321, 281 P.2d 243 (1955).

3. The necessary requisites for an implied restrictive covenant or a constructive eviction were not established by the evidence. *Cousins Inv. Co. v. Hastings Clothing Co.*, 45 Cal. App. 2d 141, 113 P.2d 878 (1941).

It is axiomatic that a remedy in damages requires proof that defendant breached some legal duty owing to plaintiff in connection with the leased premises. We agree with plaintiff that a legal duty can arise either (1) from a covenant expressed in or implied from the lease itself, or (2) from the rule pertaining to constructive evictions which requires a landlord to refrain from an intentional interference with the leasehold which materially impairs its beneficial use or enjoyment. *Myers v. Western Farmers Ass'n*, 75 Wn.2d 133, 449 P.2d 104 (1969). We first consider the question of covenant, express and implied.

■ In our opinion, the trial court was correct in ruling that the lease did not contain an express covenant. The statements in the lease which refer to a shopping center fall far short of imposing a continuing obligation upon defendant to maintain its own retail operation for the duration of the lease or guarantee that its other tenants would continue for that period. If there is ambiguity in the purpose of those references, the ambiguities should be construed against plaintiff, who was responsible for the draftsmanship. *Kandra v. Higgins, supra; Stuchell v. Mortland,* 8 Wn. App. 884, 509 P.2d 770 (1973).

■■ The covenant which plaintiff seeks to have us impose by judicial implication does not relate to the leased premises directly. Instead, such a covenant would constitute a restriction on other property of the lessor and in our view such a restriction should not be favored in law or judicially implied, absent compelling necessity.

While this question has not previously been decided in Washington, we think the following statement from *Cousins Inv. Co. v. Hastings Clothing Co., supra* at 143 correctly enunciates the prevailing view:

> It may be stated generally that implied covenants are not favored in the law; and courts will declare the same to exist only when there is a satisfactory basis in the express contract of the parties which makes it necessary to imply certain duties and obligations in order to effect the purposes of the parties to the contract made. Furthermore, implied covenants can be justified only upon the ground of legal necessity arising from the terms of the contract, or the substance thereof, and the circumstances attending its execution; and the implication from the words must be such as will clearly authorize the inference of an imputation in law of the creation of a covenant.

The specific requirements for implied restrictive covenants were summarized at page 149:

> Summarized, therefore, the rule deducible from the foregoing authorities controlling the exercise of judicial authority to insert implied covenants may be stated as

follows: (1) the implication must arise from the language used or it must be indispensible to effectuate the intention of the parties; (2) it must appear from the language used that it was so clearly within the contemplation of the parties that they deemed it unnecessary to express it; (3) implied covenants can only be justified on the grounds of legal necessity; (4) a promise can be implied only where it can be rightfully assumed that it would have been made if attention had been called to it; (5) there can be no implied covenant where the subject is completely covered by the contract.

In the case at bench, plaintiff failed to expressly require defendant to continue the shopping center—a simple objective to accomplish. Instead, the lease expressly disclaimed any agreements except those specifically included therein. Consequently, the lease provisions as a whole failed to persuade us that requirements 2, 3, 4 or 5 of the above summary are satisfied, or that compelling necessity requires us to judicially impose a restrictive covenant on defendant's other property. For similar holdings see *S.H. Kress & Co. v. Desser & Garfield, Inc.*, 193 So. 2d 192 (Fla. Dist. Ct. App. 1966); *Jolly v. Watkins*, 251 Miss. 598, 171 So. 2d 155 (1965); *Stockton Dry Goods Co. v. Girsh*, 36 Cal. 2d 677, 227 P.2d 1, 22 A.L.R.2d 1460 (1951).

The principal cases from other jurisdictions upon which plaintiff relies are distinguishable. In each of those cases rescission or cancellation of a lease were sought by one party, who claimed that the other had breached some express covenant. The issues in those cases focused on interpreting the express covenant so as to determine whether a breach had occurred, or whether the breach was material so as to support a cancellation of the lease.[2] *Ingannamorte v. Kings Super Mkt., Inc.*, 55 N.J. 223, 260 A.2d 841 (1970); *Lilac Variety, Inc. v. Dallas Texas Co.*, 383 S.W. 2d 193 (Tex. Civ. App. 1964); *Berland's, Inc. v. Northside Village Shopping Center, Inc.*, 378 P.2d 860 (Okla. 1963). These

---

[2]It should be noted that the effect of the trial court's ruling in denying recovery to either party was a rescission and cancellation of the lease.

cases do not meet the issues raised by plaintiff's claim concerning a judicially implied covenant.

■ In connection with the issue of implied covenant, plaintiff contends that its offer of proof should have been allowed. The offer would tend to establish that defendant represented to plaintiff during the lease negotiations that the contemplated building connected with the rest of the shopping center would increase the volume of plaintiff's business. Even assuming some ambiguity in those parts of the lease which refer to the shopping center, which would normally suggest a resort to extrinsic evidence, there are two reasons we think the evidence was properly excluded. First, it would directly contradict the express provision of the lease which disclaimed any other representations except those expressed in the lease. There is nothing ambiguous about that provision. It would be nullified were the testimony allowed. Extrinsic evidence should not be permitted which would contradict an express and unambiguous lease provision. *See Kerns v. Pickett*, 47 Wn.2d 184, 287 P.2d 88 (1955).

Secondly, only by treating the references to the shopping center as descriptive can they be reconciled with the disclaimer provision. We think a construction is favored which does not invalidate a clearly expressed provision in a lease. *See Peoples Mortgage Co. v. Vista View Builders*, 6 Wn. App. 744, 496 P.2d 354 (1972). In any event the purpose of allowing parol evidence is to *explain* the ambiguities in an instrument after the rules of construction have been first used to resolve them. Extrinsic evidence is not properly used to vary or modify the written instrument. *Macri v. Bergevin*, 30 Wn.2d 654, 193 P.2d 360 (1948).

We finally address the question of whether a constructive eviction occurred independently of covenant.

A constructive eviction occurs when there is an intentional or injurious interference by the landlord or those acting under his authority, which deprives the tenant of the means or the power of beneficial enjoyment of the demised premises or any part thereof, or materially im-

pairs such beneficial enjoyment. *Coulos v. Desimone,* 34 Wn.2d 87, 208 P.2d 105 (1949). Whether there has been such an eviction is, of course, generally a question of fact to be determined by the trier of the facts.

*Myers v. Western Farmers Ass'n,* 75 Wn.2d 133, 134-35, 449 P.2d 104 (1969). *See Aro Glass & Upholstery Co. v. Munson-Smith Motors, Inc.,* 12 Wn. App. 6, 528 P.2d 502 (1974).

■ In addition to the fact that defendant has not interfered with plaintiff's possessory leasehold in any way, we also do not find in the evidence that defendant has breached any duty, contractual or otherwise, which it owed to plaintiff. The many cases which have found a constructive eviction involved some act by the lessor which directly interfered with lessee's possession, or involved situations where the lessor breached some specific duty imposed by the lease. For an analysis of these cases, see the article by Professor William B. Stoebuck in *The Law Between Landlord and Tenant in Washington,* 49 Wash. L. Rev. 291, at 347-49 (1973).

■ Furthermore, where the issue is factual, the trial court's decision will not be disturbed where there is substantial evidence to support it. *Aro Glass & Upholstery Co. v. Munson-Smith Motors, Inc., supra.* Here there was substantial evidence that defendant vacated the original shopping center because of two severe floods, and not as an intentional interference with plaintiff's leasehold.

Judgment affirmed.

ARMSTRONG, C.J., and PETRIE, J., concur.

Petition for rehearing denied September 17, 1975.

Review denied by Supreme Court November 12, 1975.